# Commonwealth *v.* Bricker, Appellant.

*Crimes—Abortion—Criminal operation—Evidence — Testimony of surviving husband—Admissibility.*

In a prosecution of a physician for causing the death of a woman by a criminal operation, a conviction will be sustained where there is sufficient evidence produced to prove that the operation had been performed, and that the woman had died in consequence of it.

The testimony of another physician who made a post-mortem examination is admissible, even if the examination is made thirty days after the death, where the witness based his conclusions upon the general examination of the corpse, and upon all the facts which he had found.

The testimony of the physician was sufficient to establish the corpus delicti, and the issue was properly presented to the jury, with the instructions that the Commonwealth must not only prove that the woman died from the operation, but must also prove that the operation was committed by the defendant with intent to procure a miscarriage.

In such prosecution the husband of the decedent is competent to testify, as he neither divulged confidential communications between him and his wife, nor did he incriminate the deceased. The acts of the wife in her dealings with the physician were not protected by the privilege of confidential communication, nor was her submission to the operation a criminal act. In such a case the decedent must be considered as a victim rather than an accomplice, and the Act of May 23, 1887, P. L. 159, providing that a husband and wife shall not be permitted to testify against each other does not apply. There can be no indictment for conspiracy to commit

a crime where the concerted action of the defendant is part of the criminal act.

Argued March 11, 1920. Appeal, No. 23, Oct. T., 1920, by defendant, from judgment of Q. S. Philadelphia County, December Sessions, 1919, No. 286, in the case of Commonwealth v. William H. Bricker. Before OR-LADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KEL-LER and LINN, JJ. Affirmed.

Indictment for committing an abortion. Before BALDRIGE, P. J., of the 24th Judicial District, specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings on evidence and refusal to direct a verdict for the defendant.

*William A. Gray*, for appellant.—The Commonwealth failed to prove the corpus delicti, and the declarations of the defendant were inadmissible: 1 Cyc. 191, paragraph 6b; 1 Corpus Juris 331; Traylor v. State, 101 Ind. 65; Wharton on Criminal Evidence, vol. 1, 642; Gray v. Com., 100 Pa. 380.

The husband of the decedent was not a competent witness: 1 Cyc. 183; Solander v. People, 2 Colo. 48; Stern v. Bowman, 38 U. S. 209.

*Charles Edwin Fox*, Assistant District Attorney, and with him *Samuel P. Rotan*, District Attorney, for appellee.—The corpus delicti in abortion may be proved by circumstantial evidence: People v. Aikin, 66 Mich. 460; Seifert v. State, 67 N. E. 100; Graham v. Penna. Co., 139 Pa. 149; Trickett on Pennsylvania Criminal

Law 583; Com. v. Gibbons & Rosenberry, 3 Pa. Superior
Ct. 411; Com. v. Mitchell, 6 Pa. Superior Ct. 374.

The deceased woman was not an accomplice and was,
therefore, innocent of any crime and her husband could
testify: 1 Corpus Juris, 315, sec. 19; Com. v. Weaver,
61 Pa. Superior Ct. 571; Com. v. Bell, 4 Pa. Superior
Ct. 194.

OPINION BY TREXLER, J., April 24, 1920:

Defendant was indicted on a charge of having caused
the death of Sarah Feinberg by performing a criminal
operation upon her.

1. The first assignment is to the refusal of the court
to direct a verdict for defendant. We think there
was sufficient evidence to support the verdict. We have
the testimony of the doctor who examined the body of
Mrs. Feinberg after her death and found that she had
been pregnant and had progressed to the fourth or fifth
month, that there had been an abortion, followed by
blood poisoning causing death. There was evidence of
the defendant's visit to Mrs. Feinberg, the narration of
a witness to the effect that she was present when the
doctor and his patient had a conversation in which Mrs.
Feinberg described what was the matter with her, that
the doctor stated that he knew what she wanted, that
Mrs. Feinberg had enough children, didn't want any
more. He wanted $35 for the operation, had Mrs. Fein-
berg come to him when she was only three months gone
he would have only charged her $25. She was a good
strong woman and would be all right. He also stated
that the patient had gone six months instead of three as
she had stated, and told a witness the size of the fœtus.
After Mrs. Feinberg died the defendant reported the
case as one of appendicitis, but the post-mortem dis-
closed the fact that the appendix was normal and noth-
ing the matter with it. These are substantially the facts.
If these were believed there was enough to convict the
defendant of the crime. The inference might be legiti-

mately drawn that the defendant performed an abortion on Mrs. Feinberg and it resulted in her death.

2. Dr. Wadsworth who performed the post mortem was asked, "As a result of the examination of the womb and abdominal cavity, what do you say was the cause of the death of Mrs. Feinberg? He answered, "I shall have to answer that in a way with qualifications, because I shall have to exclude from my examination of the body the other organs, and the severity and gradation of the injury to the uterus, and from the ovaries as well, and a number of other things which I have not mentioned." The defendant strenuously objected that the doctor should not answer the question, if he had to exclude certain matters in connection with the body which he found. The witness was then asked whether from his examination he could tell the cause of death. He said he could. He then gave what he considered the cause of death was. His answer to the first question was a little confusing but we do not think the conclusion is justified that he gave an answer from which he excluded the facts which had come under his observation. What the doctor apparently desired to state was that the form of the question limited him to the result of his examination of the womb and the abdominal cavity but that he desired to include as a basis for his answer everything that came within his observation upon the general examination of the corpse and upon all the facts which he had found.

The point is also raised under this assignment that the examination made thirty days after the death was too remote to afford evidence of the cause of death. The doctor testified as to the condition of the body. It was for the jury to decide how much credence should be given to his testimony. It certainly could not be excluded for he testified to a condition of the organs which would afford a satisfactory examination.

3. The learned trial judge instructed the jury that if they believed Dr. Wadworth's testimony, they would be justified in finding that the corpus delicti had been

proven. The learned counsel for the defendant claims that they should prove that a crime had been committed before the court would be warranted in saying that the corpus delicti had been proven. Dr. Wadsworth testified that there had been an abortion. That might occur from various causes involving no criminal act on the part of anyone. The trial judge we think had authority for the statement. The question of what constitutes the corpus delicti is fully discussed in Wigmore on Evidence, Sec. 2072. The conclusion of the learned author is, "It would follow under the orthodox definition, that in homicide the fact of death, whether or not feloniously caused, is the corpus delicti; in arson the fact of burning, whether or not wilful; and in false representations, the fact of the acting in reliance upon representations, whether or not they were false." There could be no confusion in the minds of the jury as to what the judge intended by his remarks for he charged, after referring to the corpus delicti as being established by Dr. Wadsworth's testimony if believed, "That is only one step however, in the burden that lies upon the Commonwealth. They must not only prove this woman died from an abortion, but they must prove this abortion was committed by this defendant with intent to procure a miscarriage." Thus the issue was clearly presented to the jury.

4. Should the declarations of the defendant be admitted without independent evidence of the corpus delicti? This involves the same question as before discussed. Since the evidence of Dr. Wadsworth in our view, was sufficient to show the corpus delicti, of course, it would follow that the acts and declarations of defendant were clearly admissible to connect him with the act and to supply the proof that he was the one who performed the illegal operation. It was proper that the proof that the woman was dead and that she had a miscarriage should come before the proof of the admissions of the defendant, but if upon the whole case the crime is proven, the

order of proof ceases to be important. "No necessity exists that the corpus delicti, apart from the confession, should be proved to the same degree of mental certainty which would be required had there been no confession": The Modern Law of Evidence, Chamberlayne, Sec. 1601. If there is corroboration between the statements of the defendant and the facts as sworn to by the doctor, who made the examination, that is all that is necessary and if this appears, the rule of evidence as to the order of proof is at end with the jury and they are left with nothing but the general duty in criminal cases to be convinced of the defendant's guilt beyond a reasonable doubt: Wigmore on Evidence, Sec. 2073.

5. The husband of Sarah Feinberg was called and testified to a number of facts in the case. The defendant's attorney succeeded in persuading the trial judge to exclude nearly all of his testimony. There was some allowed to remain which referred to certain prescriptions given by the doctor. This it is alleged should have been likewise excluded and its admission constitutes reversible error. The defendant relies upon Cornelius v. Hambay, 150 Pa. 359. It was there held that in an action of crim. con. the husband shall not be permitted to testify against the wife. He was called to prove the criminal intercourse with the defendant. It was held, "It was not competent for him to forge a single link in the chain of circumstances pointing to his wife's criminal conduct." The language of the Act of May 23, 1887, P. L. 159, is "nor shall husband and wife be competent or permitted to testify against each other." The basis of it is to prohibit testimony of either party to the marriage relation so far as to incriminate the other party to the contract. In the case before us the wife was not an accomplice but under our decisions is looked upon as a victim rather than an offender: 1 Corpus Juris 315; Com. v. Weaver, 61 Pa. Superior Ct. 571; Com. v. Weible, 45 Pa. Superior Ct. 207. Not being guilty of any crime it is hard to see how any testimony of her husband

could incriminate her. Counsel for the defendant replies that although she is not guilty of a crime in procuring an abortion she was liable to an indictment under the common law for a conspiracy, but this theory is not tenable. Thêre can be no indictment for conspiracy to commit a crime where the concerted action of the defendants is part of the criminal act. Thus a man and woman cannot conspire to commit adultery: Shannon and Nugent v. The Commonwealth, 14 Pa. 226. Mrs. Feinberg and the defendant could conspire as against a third person, but they could not conspire between themselves to commit a crime in which they alone participated and which was not directed toward anyone else.

Furthermore the question of his competency must be considered in relation to the fact that his wife is dead. This the appellant contends makes no difference relying upon the case of Stein v. Bowman et al., 13 Peters (U. S.) 209. It was there held that the fact that the husband was dead did not weaken the principle that a wife could not be called to discredit her husband, that is to prove that he had committed perjury by his own confessions. That case is only authority for the principle that confidential communications between husband and wife are not competent, even though the wife be dead. Again referring to Wigmore on Evidence, Sec. 2237, the learned author after reviewing the cases from various jurisdictions, sums up his conclusions, thus "There is no privilege then, which prevents the surviving spouse from testifying, after the death of the other, in disparagement of the conduct or the property of the deceased; nor is it material that the testimony relates to matters which occurred during the marriage. The few rulings taking the contrary view are misled by the analogy of a different privilege, namely, that which prohibits the disclosure of marital confidential communications. It is a legitimate corollary of that privilege that it prevails even after the death of one spouse. But the two privileges are entirely distinct; the former, for example, has been in many

jurisdictions abolished, while the latter has been nowhere abolished. The reason of the former privilege ceases with death; that of the latter does not. Each has a separate scope; for example, a wife might be prevented from revealing a confidential communication, even though not testifying against her husband; and she might be prevented from testifying against her husband, though her testimony involves no confidences. Thus it is that a wife, after the husband's death, is not privileged to withhold facts involving disparagement of his conduct or estate during life, so long as she does not violate the other and distinct privileges against disclosing confidential communications."

As the testimony of Feinberg did not betray any confidential communication between him and his wife and did not tend to incriminate his wife and could not disturb the marital relations because she was dead, we think it was admissible.

7. The prescriptions which were given by the defendant to Mrs. Feinberg were identified by the husband, but it is claimed that his identification was not sufficient so as to give them the character of a standard or test of his writing for the reason that Feinberg testified that he did not recognize the writing. His testimony was not as satisfactory as it might have been. In his examination-in-chief, he positively identified the prescriptions. Upon cross-examination he insisted that he knew that they were the prescriptions which the doctor had written and signed in his presence but he did not give any satisfactory answer to the question as to how he recognized them. It would have been well if those matters had been brought out more fully. This however, does not afford ground for a reversal of the case. The certificates in question are not printed and we cannot determine anything about them, nor are we required to pass upon their admissibility. They should have been printed with the rest of the testimony.

8. The remaining assignments of error are involved in the questions which we have already considered.

All the assignments of error are overruled and the judgment is affirmed and it is ordered that the defendant, appellant, appear in the court below at such time as he may be there called, and that he be by the court committed until he has complied with the sentence or any part of it that had not been performed at the time this appeal was made a supersedeas.