## Commonwealth v. Maxberry et al.

*Bryan A. Hermes*, Assistant District Attorney, for Commonwealth.
*Henry Gouley*, for defendants.

KUN, J., March 15, 1930.—The defendant Marshall was convicted on a bill of indictment charging him and others (not tried) with conspiracy to receive stolen goods which were to be stolen by the others, and both defendants, Marshall and Maxberry, were convicted on another bill of indictment charging them with having conspired with others (not tried) to become accessories after the fact to the others.

The facts which gave rise to these rather extraordinary indictments were the following: On Nov. 15, 1929, the prosecutors, the Jacksons, were robbed of a quantity of jewelry at their home in Drexel Hill, Delaware County, presumably by their maid, Betty Morman, who left her place of employment that day while her mistress was out. Investigating the matter, the detectives, having been advised of an address in Philadelphia which the maid had furnished, found at that address the defendant Maxberry, a brother of the maid. When asked what he knew of the robbery, he freely told the detectives that on the night of Nov. 14, 1929, the night before the robbery supposedly took place, he had gone to his sister's place on Federal Street to see her, and found her there with a man, Burnett, who asked him to get Marshall, the other defendant, because he had important business with him. When Marshall came in, Burnett asked him when he was going to be married, and whether he had his ring as yet, and, on replying in the negative, Burnett told Marshall he had a good bargain for him in the way of a ring. Marshall wanted to see it, and Maxberry's sister, the maid, then spoke up and said she was going to get some jewelry, including the ring, by robbing her employers; that they needed $25 to get to New York to sell the jewelry, and that they would sell the ring to Marshall for $25. Marshall said he would give $25 for the ring the next day, adding that he might not be able to get all of the $25, when Maxberry chimed in that he could let him have some of the money to enable him to get the ring.

So far as the evidence in this case discloses, the defendants had no communication or contact with the maid and Burnett after these conversations; which, indeed, were proven by alleged confessions of the defendants as above given, there being no other proof of them. The authorities, being unable to locate the robbers, arrested the two defendants and having no other basis for holding them, did so by procuring the indictments against them above referred to. They are unique and without precedent. The ingenious and resourceful counsel for the private prosecutors induced the district attorney's office to

draw up these indictments by the very persuasive argument, more apparent than real, that inasmuch as it is a crime to receive stolen goods there may be a conspiracy to commit such a crime; likewise, that as it is a crime to be an accessory after a fact, there may be a conspiracy to become one. It was on this theory that the court permitted the bills to go to the jury, but with a lingering doubt, which has been justified, because the conclusion has been reached that the indictments are not sustainable.

Assuming that the rather casual and meagre conversations between the defendants and the intending robbers could rise to the dignity of an agreement or union of wills to commit a crime, there is one decisive reason why, as between those charged in these cases with conspiracy, no conspiracy could be formed to commit the crimes mentioned. Undoubtedly, two or more persons may conspire to receive stolen goods from another, the thief; or perhaps two or more persons could conspire to become accessories after the fact, to another; but there can be no indictment for conspiracy when the concerted action of the defendants is part of the criminal act. Thus, a man and woman cannot conspire to commit adultery (Shannon and Nugent *v.* Com., 14 Pa. 226) ; likewise, a woman upon whom an abortion is to be performed cannot be charged with conspiracy with the doctor who is to perform the abortion, that is to say, persons cannot conspire between themselves to commit a crime in which they alone would participate and which was not directed toward any one else: Com. *v.* Bricker, 74 Pa. Superior Ct. 234. The unlawful thing to do which a conspiracy can be entered into must, in a sense, be something which would be capable of being done by one alone (that is, capable in law, not necessarily in fact), a conspiracy being merely the corrupt agreement between two or more persons to do that unlawful thing by concerted action; or it must be of a nature particularly adapted to injure the public or some individual by very reason of the combination. However, if the nature of the unlawful thing as to which the conspiracy is charged be such that it cannot be done excepting by the concurrent action of those charged and could not be committed unless they alone participated in it, there is in such a situation no basis for a charge of conspiracy, as the cited cases show.

Applying these principles to the cases before us, we have a conviction of Marshall on a bill charging him with conspiracy with the maid Morman and one Burnett, the intending robbers, to receive stolen goods, that is to say, goods which the latter were going to steal. Now, the crime of receiving stolen goods could not be committed by Marshall himself. It could be committed only by the concerted action of the thief delivering the goods to Marshall and his receipt of them, knowing them to be stolen. As above stated, Marshall could have conspired with another to receive stolen goods from the thief, but an intending receiver cannot be charged with conspiracy with an intending robber to receive stolen goods for the reasons stated.

There is another reason why this indictment cannot be sustained. A person can hardly be charged with conspiring to do something which he could not do. As is well known, larceny and receiving stolen goods are two separate and distinct offenses. A thief cannot be convicted of receiving goods which he stole.

What has been said in the main discussion applies likewise to the other bill of indictment, in which the two defendants, Marshall and Maxberry, are charged with having conspired with the said Morman and Burnett, her friend, to become accessories after the fact, based on the argument that, inasmuch as one of them said he would buy a ring for $25 and the other chimed in that if the former were short he would give him some of the money, and if that

were done, it would furnish the robbers with money to get out of town, *ergo* there was a conspiracy as charged.

Assuming that theoretically two persons could conspire to become accessories after the fact to a third, the three could not be charged with such a conspiracy, because likewise the concerted action of the defendants would be indispensable to create the criminal act; that is to say, the crime of accessory after the fact by furnishing money could not be accomplished unless the third persons who had committed some crime took and received the money from the first two, and, as stated in the Bricker case, "they could not conspire between themselves to commit a crime in which they alone participated and which was not directed toward any one else."

Precedents are evidences of the law, and the lack of them implies that the law has never before undertaken to redress such extraordinary alleged offenses as were charged in these two bills of indictment. Now that the attempt has been made, the lack of precedent has been accounted for by showing that the charges are not sustainable.

The motions for new trial are granted, and the District Attorney is given leave to submit the bills for verdicts of "not guilty."