Commonwealth *v.* Belgrave et al., Appellants.

Argued December 9, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Garland D. Cherry,* with him *Kassab, Cherry, Curran & Archbold,* for appellants.

*Bernard P. Carey, Jr.,* Assistant District Attorney, with him *Ralph B. D'Iorio,* Assistant District Attorney, and *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, September 18, 1970:
Judgments of sentence affirmed.

HOFFMAN, J., dissents and would grant a new trial.

DISSENTING OPINION BY SPAULDING, J.:

I respectfully dissent.

This is a companion case to *Commonwealth v. Green,* 217 Pa. Superior Ct. 288, 269 A. 2d 517 (1970). Appellants, Louis Belgrave, Lemuel Belgrave, Ira Bentley, Allen Coades, James Faust, Jr., Harry F. Seth, John H. Wilson, Jr., and Washington Howard, Jr., appeal from the judgments of sentence of the Court of Common Pleas of Delaware County. All of the facts supporting the indictments are set out at length in *Green,* supra, and it is not necessary to restate them.

All eight appellants herein were arrested and indicted on charges of riot, inciting to riot, conspiracy, public nuisance, common law nuisance, common law conspiracy, and obstructing the public highway. Appellants Washington Howard, Jr. and Lemuel Belgrave were also charged with assault and battery on a high school band member, aggravated assault and battery, assault with intent to maim, malicious mischief to real and personal property, and riotous destruction of property.

Trial of the sixteen accused including these eight appellants began on January 20, 1969. After the close of the Commonwealth's evidence, appellants entered demurrers which were denied by the court. The Commonwealth withdrew the charge of riotous destruction of property as to Belgrave and Howard and reduced the charges against the eight appellants to riot, inciting to riot and conspiracy.

On January 23, 1969, the jury found all of the appellants guilty of riot, inciting to riot, and conspiracy; found Lemuel Belgrave not guilty of all the assault-related charges and Washington Howard guilty of all of those charges except assault with intent to maim.

On July 30, 1969, motions for new trial and in arrest of judgment were denied. On September 5, 1969, each appellant was sentenced to terms of 1½ to 3 years for riot, 1½ to 3 years for inciting to riot, and 1 to 2 years for conspiracy, and each was fined $1100 plus costs. Howard was additionally sentenced to a term of 1½ to 3 years for aggravated assault and battery, and fined an additional $500 plus costs.[1] On all statutory offenses, these sentences imposed the maximum term and fine. All sentences were to be served consecutively. The common sentences were identical with those of the other defendants who had entered guilty pleas.

In consolidating the common indictments, the indictment against Richard Clark pertaining to individual assault upon a family (see *Commonwealth v. Green*, supra), and the indictment pertaining to assault upon the band member, and in denying motions for severance, the court reasoned that consolidation was proper because of a "common threat [thread] of conspiracy." In denying appellants' motions for a new trial, the court cited *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A. 2d 820 (1954) as follows: "The trial judge because of his position and for [other] obvious reasons has been given a discretion to determine whether a *number of bills of indictment* should be consolidated and tried together, and his exercise of discretion in such matters will not be reversed by an appellate court unless there has been [a] manifest abuse of discretion or a joint trial is so unfair as to be clearly unjust and prejudicial to one or more of the defendants. Especially is a joint trial permissible, if not advisable, when the crimes charged *grew out of the same acts and much*

---

[1] Howard received suspended sentences for malicious mischief and the assault-related conspiracy conviction. In fact, the latter conviction was nullified, since Howard alone was convicted of this conspiracy; that charge was withdrawn against those who pleaded guilty to the assault.

*of the same evidence is necessary or applicable to both defendants. (at 415)."\** [Emphasis added by the court below.]

From my review of the record in this case I conclude that the denial of severance was a manifest abuse of discretion. Joining all of these matters for trial aggravated the complexity, ambiguity, and undue suggestiveness of testimony to an extent that was "clearly unjust and prejudicial" to the defendants.

Nothing is more fundamental and essential to our jurisprudential system than the presumption of innocence and the requirement that conviction of an individual be obtained only upon proof beyond a reasonable doubt that he is individually guilty as to all essential elements of a crime. These basic safeguards are threatened by the blurring, massing tendencies of charges whose focus is on associational guilt, like the conspiracy and riot charges here.[2] See *Kotteakos v. United States*, 328 U.S. 750, 772-73 (1946).

In *Schaffer v. United States*, 362 U.S. 511, 518 (1960), Justice DOUGLAS (in a dissenting opinion joined by Chief Justice WARREN, Justice BLACK and Justice BRENNAN), citing *Kotteakos*, supra, stated: "It is not enough to say that the evidence of the guilt of each of the present petitioners may have been clear.

---

\* Bracketed words and citations in original omitted by the court below.

[2] Conspiracy is defined by statute, Act of June 24, 1939, P. L. 872, §302, 18 P.S. §4302: "Any two or more persons who . . . maliciously conspire . . . or do . . . any . . . malicious or unlawful act to the prejudice of another, are guilty of conspiracy . . . ."

See *Commonwealth v. DiEmidio*, 198 Pa. Superior Ct. 571, 182 A. 2d 537 (1962), rev'd sub nom. *Commonwealth v. Yobbagy*, 410 Pa. 172, 188 A. 2d 750 (1963) ; *Commonwealth v. Horvath*, 187 Pa. Superior Ct. 206, 144 A. 2d 489 (1958), as to proof of conspiracy.

References to common-law definitions of crimes comprehended within riot statute, Act of June 24, 1939, P. L. 872, §401, as amended July 29, 1953, P. L. 1420, §1, 18 P.S. §4401, appear below.

Reasons for severance are founded on the principle that evidence against one person may not be used against a codefendant whose crime is unrelated to the others." (at 523).

In this case, the trial judge justified consolidation on the ground that all of the actions were in the furtherance of one conspiracy. If the testimony indicates any conspiracy it indicates two: one with respect to the riot-related charges and one involving the band-member assault. Although the testimony showed that some of the other defendants came to the support of the assault actors after the assaults, the record is barren of any showing that these particular assaults were contemplated, sponsored or agreed to by those involved only in the riot charges.

The limited relevance of the assault evidence was far outweighed by the prejudicial effect of that testimony on those who were not involved. By far the major portion of the testimony was repetition of the facts of the two assaults. Clark was shown to have assaulted a woman without provocation; to turn on her sixteen-year-old son when he sought to protect her; and to beat her husband about the head with the husband's crutch. The impact of this testimony was exceeded only by that pertaining to the band-member assault, in which five men were said to have punched and kicked unconscious a seventeen-year-old boy wearing glasses. Allowing that inflammatory evidence into this case was aggravated by the trial judge's failure to limit its applicability, until very late in the charge, to the identified participants.

Further prejudice resulted from the blurred and ambiguous identification testimony given by the police officers. They constantly referred to actions by "a" group, creating the impression that the defendants had acted as one. In fact, their testimony identified not one

group but varied and shifting ones, with sixteen names being mentioned or not mentioned in rapid succession. Generally, the officer would narrate that a group had done something, and name members of the group. After giving all of his testimony, he would point out all persons referred to among the defendants, in a catchall manner. Since some officers testified to several episodes, this created the impression that all defendants were equally involved, a pattern which was particularly harmful to those who had actually been identified as merely being present. The mental task of keeping the names and actions straight posed an extreme difficulty, if not an impossibility, for the jury.

The court's review of the testimony for the jury aggravated the undue suggestiveness of testimony rather than curing it. In my view, the complexity of the evidence and the extreme variation in the amount and type of evidence against the various defendants required marshalling the evidence against and for each defendant separately. In fact, the court left out several inferences favorable to the defense by omitting the cross-examination conducted by those defendants who had pleaded guilty (the appellants in *Commonwealth v. Green,* supra). Included, however, was reiteration of all the Clark assault testimony, most of which did not involve the remaining defendants. In addition, explanation of the charges and reiteration of the testimony as to the band-member assault, which related to only two of the remaining defendants, occupied the major portion of the charge. The form of review also minimized differences in the levels of activity attributed to the various defendants, and in the extent to which they had been identified.

The appellants urge that testimony pertaining to activity during the playing of the National Anthem should not have been admitted because the activity was

constitutionally protected, and because it was not shown to be related to subsequent conduct. (Defense counsel repeatedly sought to exclude this evidence at trial.) The court, in denying motions for a new trial, stated that defendants' conduct could fit the definition of riot as "executing a lawful private enterprise in a violent and turbulent manner to the terror of the people," *Commonwealth v. Abney,* 195 Pa. Superior Ct. 317, 171 A. 2d 595 (1961), or could properly be found to constitute inciting to riot. The testimony did not support that view. Several police officers testified merely that one member of a group came to the front of the stands and motioned to spectators not to stand, while others motioned to those around them from their seats. The testimony disclosed that scattered fighting broke out after this incident, but it was placed differently in time by the various officers: most stated it to be simultaneous with the Clark incident, which did not occur until halftime of the game.

While the incident was relevant to a showing of confederation among the defendants, it should not have been left for the jury's consideration without a very careful statement of the constitutional questions involved. Peaceful refusal to stand for the Anthem would be expressive behavior similar to that upheld as constitutionally protected in *West Virginia State Board of Education v. Barnette,* 319 U.S. 624 (1943) and *Tinker v. Des Moines Independent School District,* 393 U.S. 503 (1969). Urging others to participate in such activity could not constitute incitement to illegal activity, and agreement to take part in such activity could not constitute conspiracy to do an unlawful act. The jury should have been instructed that they could not find the conduct of this incident unlawful unless they found that it was conducted in a violent and turbulent manner, or for the purpose of arousing the crowd to violent

and turbulent behavior, or with reckless disregard of the likelihood of such arousal. See, e.g., *Stromberg v. California,* 283 U.S. 359 (1931) ; *Herndon v. Lowry,* 301 U.S. 242 (1937) ; *Brandenburg v. Ohio,* 395 U.S. 444 (1969). Since the jury may have convicted the appellants for constitutionally protected activity, the court below incorrectly upheld the verdict. See *Thomas v. Collins,* 323 U.S. 516 (1945) ; *Street v. New York,* 394 U.S. 576 (1969).

Generally the jury received no guidance as to how to apply the elements of the crimes to the facts. By not explaining the legal terms used in the statutory and common law definitions of the crimes, the charge in effect diminished what the jury had to find in order to convict. For example, as to riot and inciting to riot, the court did not explain such terms as "proceeding with a common intent and purpose to the commission of unlawful acts" or "conduct which would naturally lead or urge."[3] At the same time, the jury was never instructed that defense evidence should not be judged by the standard of proof beyond a reasonable doubt. In sum, the instructions did not fulfill the primary duty of clarifying the charges, and the issues involved therein, so that the jury could comprehend the questions they were to decide. See *Commonwealth v. Meas,* 415 Pa. 41, 202 A. 2d 74 (1964) ; *Commonwealth v. Malone,* 354 Pa. 180, 47 A. 2d 445 (1946).

The most glaring injustice to these appellants is the excessiveness of the sentences imposed upon them. As discussed in *Commonwealth v. Green,* sentences of this length for the activities attributed to the appellants are unprecedented. These consecutive maximum sentences violate the double jeopardy concept that a man may not be punished more than once for the same

---

[3] See footnote 6, *infra.*

criminal act. See *North Carolina v. Pearce*, 395 U.S. 711 (1969).

In *Pinkerton v. U.S.*, 328 U.S. 640, 643 (1946), the Supreme Court stated that a conspiracy charge could not be added to a substantive charge "where the agreement of two persons is necessary for the completion of the substantive crime and there is no ingredient in the conspiracy which is not present in the completed crime."[4]

The court here, in its charge, repeated the statutory definition of conspiracy (see Note 2) and then stated the following: "The offense of conspiracy is complete the moment the parties maliciously agree to do the unlawful thing. It is therefore not necessary for the Commonwealth to prove that the conspiracy reached fruition. Further the confederation need not be formally proved. It may be established inferentially by showing relations, conduct, or circumstances of the parties. . . . [Maliciously means] done wrongfully and intentionally, without legal justification or excuse."

Common unlawful intent—malicious agreement—is required to make out the crimes of riot, unlawful assembly, and rout, all of which are subsumed under the charge of riot. Riot was defined by the court as ". . . the assembling together of three or more persons in a riotous, tumultuous and disorderly manner, and pro-

---

4 Although we held in *Commonwealth v. McSorley*, 174 Pa. Superior Ct. 634, 638, 101 A. 2d 919, 921 (1953), that the crimes of conspiracy and riot did not merge, in my view that reasoning should not be upheld in the instant case. We relied on dictum in *Commonwealth v. Bricker*, 74 Pa. Superior Ct. 234, 240 (1920) that two could not conspire to commit a crime in which they alone participated, and which was not directed toward anyone else, distinguishing riot because it is directed toward others. Since statutory conspiracy must be "to the prejudice of another" that element is actually common to both crimes, rather than distinguishing. By the same token, there could not be statutory conspiracy under the facts of *Bricker*, as there interpreted.

ceeding with a common intent and purpose to the commission of unlawful acts which tend to alarm and terrify law-abiding citizens . . . ." Unlawful assembly was defined as meeting upon a purpose which if executed would make the participants rioters, and separating without carrying the purpose into effect. Rout was defined as incompletely executed riot. Under the definition of conspiracy given the jury in this case, once they found riot, rout, or unlawful assembly they were forced to find conspiracy.[5]

This Court has stated that inciting to riot merges into riot where the very acts that constitute riot also constitute inciting to riot. *Commonwealth v. Apriceno,* 131 Pa. Superior Ct. 158, 198 Atl. 515 (1938). See *Commonwealth v. Green et al.,* supra. The definitions of these crimes given by the trial court in its charge blurred distinctions between them rather than the contrary.[6] Separable elements can be perceived in the two

---

[5] A fourth crime subsumed under riot—affray—may not require agreement as defined by the court: "If a sudden disturbance arises among persons meeting together for an innocent purpose, they will be guilty of a mere affray." But if the jury found the defendants guilty of "mere affray" without agreement, it would have been inconsistent to find conspiracy, since the same acts were the only basis for either finding.

[6] The conclusion of the court's definition of riot was as follows: "Personal injury or violence to any individual, or damage to property is not an essential element of the crime of riot. It is enough if there are circumstances at least of an apparent tendency thereto, as are naturally apt to strike terror into the people, as the show of armor, threatening speeches, or turbulent gestures."

The total definition of inciting to riot was the following: "Inciting to riot from the very sense of the language means such a course of conduct by the use of words, signs or language, or by any other means by which one can be urged on to action, as would naturally lead or urge other men to engage in or enter upon conduct which if completed would make a riot. If any man or set of men should combine and arrange to so agitate the community to such a pitch that the natural and to be expected results of such agitation would be a riot, that would be inciting to riot."

crimes from the point of view of other members of the community, but from the point of view of the Commonwealth they only represent different degrees along a continuum of danger that the community will be disrupted. Here, as in *Apriceno,* the same acts could constitute one crime or the other, and the same governmental interest was represented by both crimes.

Secondly, where the evidence of actual participation by the defendants varied so widely, a lack of differentiation in sentences cannot be justified. Further, such uniform severe sentences do not take into account differences in age, education, occupation, family responsibilities, and the like. See, e.g., *Commonwealth v. Bell,* 417 Pa. 291, 208 A. 2d 465 (1965) ; *Commonwealth ex rel. Wildrick v. Myers,* 199 Pa. Superior Ct. 85, 184 A. 2d 158 (1962). I find this treatment of individuals, regardless of the charges involved, unacceptable.

For the above reasons, I would reverse the order of the court below and remand for new trials in accordance with this opinion.

CERCONE, J., joins in this dissenting opinion.