Commonwealth *v.* Green et al., Appellants.

Submitted December 10, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Carmen P. Belefonte,* and *Kassab, Cherry, Curran & Archbold,* for appellants.

*Ralph B. D'Iorio,* Assistant District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, September 18, 1970:
Orders affirmed.
HOFFMAN, J., dissents and would grant a new trial.

————

DISSENTING OPINION BY SPAULDING, J.:
I respectfully dissent.

Appellants, William Oliver Green, David Poteat, Michael Bell, Leroy Barnes, John O. Townsend, Reginald Anderson, Charles Lavender and Richard Clark, appeal from the orders of the Court of Common Pleas of Delaware County dismissing their post-conviction petitions after hearings. Appellants all contend that the guilty pleas upon which their convictions and sentences were based were not knowingly, intelligently and voluntarily entered and that they were denied effective assistance of counsel.

On the afternoon of October 5, 1968, Chester High School played football against Sun Valley High School at Chester High School's field. During the playing of the National Anthem that preceded the contest, some spectators refused to stand, with at least one of the spectators exhorting others to remain seated. At half-time three spectators were assaulted by a man who was shortly thereafter arrested by the Chester police. In arresting him, policemen had to pass through a group of men who surrounded him and shouted insults at them. Some time after this incident, a number of persons became rowdy and boisterous. Following the game

one of the Chester High School Band members was pulled from his truck and assaulted by five individuals. The total activity lasted from 1:30 p.m. to 6:00 p.m. Three days later, sixteen spectators, including the eight appellants in this case, were arrested and indicted for riot, inciting to riot, conspiracy, public nuisance, common law nuisance, common law conspiracy, and obstructing the public highway. Appellant Clark was also indicted on several charges for the assault upon the three spectators, and appellants Barnes, Anderson and Lavender, among others, were indicted for the assault upon the band member.

On January 20, 1969, the sixteen accused were tried. See companion case, *Commonwealth v. Belgrave*, 217 Pa. Superior Ct. 297, 269 A. 2d 317 (1970). The court, over objection, consolidated all matters for trial, refused motions for severance, and declined to grant a nonjury trial unless all defendants agreed. During the trial, after a recess following the Commonwealth's evidence, the appellants offered guilty pleas which were accepted after individual colloquies. On the indictments common to all the defendants, pleas were entered only for riot, inciting to riot, and conspiracy. Clark additionally entered pleas for assault and battery, and obstructing an officer; Barnes, Lavender and Green for aggravated assault and battery, and malicious mischief to real and personal property.

On January 24, 1969, appellants were sentenced. Each appellant was sentenced to 1½ to 3 years for riot, 1½ to 3 years for inciting to riot, and 1 to 2 year for conspiracy, and each was fined $1100 plus costs. Clark was additionally sentenced to a term of 1 to 2 years with a fine of $100, and Barnes, Anderson and Lavender to terms of 1½ to 3 years with a fine of $500. On all statutory charges the maximum sentence and fine were imposed without variance for any cir-

cumstances. All sentences were to be served consecutively.[1]

A plea of guilty operates as a waiver of all the constitutional, statutory and judicially created safeguards afforded a defendant in a trial determination of guilt. *Commonwealth ex rel. West v. Myers,* 423 Pa. 1, 6, 222 A. 2d 918, 921 (1966). "For this waiver [of constitutional rights] to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.' Johnson v. Zerbst, 304 U.S. 459, 464 (1938)." *McCarthy v. United States,* 394 U.S. 459, 466 (1969). See *Kercheval v. United States,* 274 U.S. 220, 223-24 (1927). The defendant must know the "nature of the charges . . ., the acts sufficient to constitute the offense for which he is charged and the permissible range of sentences." *Commonwealth ex rel. West v. Rundle,* 428 Pa. 102, 106, 237 A. 2d 196, 200 (1968). He must understand the consequences of his plea decision. See *Kercheval v. United States,* supra; *Commonwealth ex rel. Barnosky v. Maroney,* 414 Pa. 161, 165, 199 A. 2d 424, 426 (1964).

Our cases have not prescribed a fixed procedure for determining whether defendants understand all the implications of a guilty plea. *Commonwealth ex rel. West v. Myers,* supra, at 7, 222 A. 2d at 922. For pleas made prior to June 2, 1969 (date of decision in *Boykin v. Alabama,* 395 U.S. 238), a subsequent collateral hearing has been held sufficient to determine the validity of

---

[1] Townsend, the only juvenile, was the one exception to the common sentencing, with a sentence of 3 years at Camp Hill. Clark received a suspended sentence for obstructing an officer, as did Barnes, Lavender and Anderson for malicious mischief. At the sentencing hearing the Commonwealth was granted permission to withdraw the additional common indictments, Clark's additional indictment for assault with intent to maim, and Barnes, Anderson and Lavender's additional indictments for assault with intent to maim, riotous destruction of property and conspiracy related to the assault.

the plea. *Commonwealth v. Godfrey,* 434 Pa. 532, 254 A. 2d 923 (1969). However, *Commonwealth ex rel. West v. Rundle,* supra, decided January 3, 1968, held that such determination would "best be made through the vehicle of an on the record inquiry" at the time of the plea. For pleas made from that date on, a silent record, or an inadequate recorded inquiry, at least shifts the burden of proof to the Commonwealth. *Commonwealth v. Cushnie,* 433 Pa. 131, 135, 249 A. 2d 290, 293 (1969).[2]

In the instant case, although the court conducted colloquies, the questions asked were not designed to probe the defendants' actual understanding of what they were admitting and what the consequences would be.[3] The court addressed most questions to the attor-

[2] The record in *Cushnie* was not silent; it showed an inadequate colloquy. The Court there indicated that but for the non-retroactivity of *West* there would be a shift of burden. 433 Pa. at 136.

[3] A typical colloquy was the first, with Clark: "District Attorney: May I call to Your Honor's attention the fact that Mr. Clark is also pleading guilty to matters in case 317 [the assault]. The Court: Yes, that is right. All right, Mr. N. [the attorney]. Have you advised your client? Attorney: Your Honor, I have advised my client of his right to a trial by jury, of his rights to a trial by a judge without a jury, of his rights to appeal, both of the verdict and of the sentence. And my client has indicated to me that he desires to plead guilty. I have also apprised him of the possible penalties that each of these charges that he is pleading guilty to carries. He has indicated to me that he wishes to plead guilty. The Court: You have advised him that he has a right to appeal from any sentence imposed by this Court? Attorney: Yes, verdict and sentence. The Court: Did you have any difficulty communicating with him? Does he understand English? Attorney: No sir. I have discussed with him a few days about a possible plea. The Court: Is what your attorney is saying to me what you are really intending to do here, Richard? Clark: Yes. The Court: Do you understand that by answering [entering] this plea of guilty you are admitting that everything the Commonwealth says is true, you are admitting committing these crimes? Clark:

neys, and then asked the defendants if they agreed or understood. Questions addressed to the defendants themselves were usually to be answered "yes" or "no." Even the apparently simple question, "Do you understand that by entering this plea of guilty you are admitting that everything the Commonwealth says is true, you are admitting committing these crimes?" was not likely to reach the defendant's personal understanding in this case. Because of the constitutional and technical complexities of the crimes of riot, inciting to riot, and conspiracy, see *Commonwealth v. Belgrave,* supra, even if a defendant admits that all the testimony he has heard is true, he is completely dependent upon his attorney or the court for a decision as to whether he is guilty of the crimes. Due process requires an inquiry which will establish whether the accused understands and admits the specific acts and intentions that make out the crime. See *Commonwealth ex rel. West v. Rundle,* supra. In the instant case, defendants' former counsels' testimony at the post-conviction hearings indicated that they believed they had explained the charges, but that does not meet the specific question of what the defendants understood. In addition, the waived defenses on which appellants base their claim of ineffective assistance of counsel suggest that the requisite elements of the crimes were not pointed out. For example, Clark was arrested after his assault; there was little evidence to relate him to the other charges. Poteat's alleged leadership in the National Anthem incident raised First Amendment questions; and the incident was not shown

Yes. The Court: All right. We will accept your plea. District Attorney: [Statement of which charges Clark was pleading guilty to.]"

Later colloquies also included the questions whether the defendant was pleading guilty of his own free will and/or whether any promises or threats had been made to him.

to have a culpable relationship with what followed. See *Commonwealth v. Belgrave,* supra. Those defendants not implicated in the assaults were not identified as having done much more than shouting.

The handling of these guilty pleas by the court also raises questions in relation to plea bargaining and sentence. Recent cases have attempted to reconcile the practical issues of plea bargaining with constitutional waiver standards. See *Commonwealth v. Garrett,* 425 Pa. 594, 598, 229 A. 2d 922, 925 (1967); *Commonwealth v. Evans,* 434 Pa. 52, 252 A. 2d 689 (1969). *Evans,* in a note, indicates that "a greater degree of certainty that the bargain will be accepted is necessary for the operation of the system." The procedure recommended for creating such certainty emphasizes open acknowledgment of the bargaining by all concerned, for the protection of the defendant. Counsel, after agreeing upon the concessions desired, should ascertain the court's willingness to permit them. The court, if it decides that final disposition will not include the concessions contemplated, should so advise the defendant and call for affirmance or withdrawal of the plea. 434 Pa. at 56-57.

Here, we have no explicit evidence beyond the indictments withdrawn of whether a bargain was made, or whether the court ever stated a position on concessions. The court's only references to sentencing possibilities at the plea hearings were to ask the attorneys whether they had explained the range of possible sentences to their clients. But under circumstances like those of the instant case, a man decides to plead guilty because he is persuaded that it is to his advantage to do so. Unless a procedure like that recommended in *Evans* is followed, we cannot judge that decision by the logic of contracts between equals. It is unlikely that defense counsel here would have permitted guilty pleas if they had imagined that sentences of from eight

to eleven years would be imposed. The testimony of attorneys and defendants at the post-conviction hearings established that at the time of the pleas the attorneys had estimated sentences of from six to eleven, or eleven to twenty-three *months.*

That estimate was in accord with precedent. In the similar case of *Commonwealth v. Abney,* 195 Pa. Superior Ct. 317, 171 A. 2d 595 (1961), after a football game between the high schools of Norristown and Ridley Township, "a continual series of violent and turbulent acts was perpetrated" by a group of Norristown boys upon the Ridley boys and girls, in which racial differences appeared to play a part. Upon a conviction of participating in a riot, one of the five defendants was committed to Montgomery County Hall, and the other four were sentenced to 2 to 23 months in jail.

In *Commonwealth v. Apriceno,* 131 Pa. Superior Ct. 158, 198 Atl. 515 (1938), the defendant participated in a strike which became riotous, and lasted several days. On convictions of riot and inciting to riot, she was sentenced to a term of 6 months.

Further, in *Apriceno,* supra, at pp. 161-2, it was stated that under circumstances where the very acts that constituted riot constituted incitement to riot, the two offenses merged, so that consecutive sentences could not be imposed.

My research has revealed no case in which the total sentence for these two offenses exceeded the maximum of one, even where there was clear evidence of separate incitement activity. In *Commonwealth v. Hayes,* 205 Pa. Superior Ct. 338, 209 A. 2d 38 (1965), appellant had identified himself as "in charge of an area" in activity that was admitted to be a riot. On conviction for both offenses, sentence was one term of 1½ to 3 years. In *Commonwealth v. Merrick,* 65 Pa. Superior Ct. 482 (1917), appellant was an instigating leader in a riotous three week long strike that involved

thousands of people, armed violence, destruction of property and loss of life. His sentence for both offenses was one term of two years, then the maximum.

It should also be noted that conspiracy and riot tend to overlap, since the crime of riot requires the element of agreement. (We have held that these offenses do not merge, in *Commonwealth v. McSorley,* 174 Pa. Superior Ct. 634, 638, 101 A. 2d 919, 921 (1953), because of a distinction which, in my view, we might now reject. See *Commonwealth v. Belgrave,* supra).

Even if the offenses of riot, inciting to riot, and conspiracy in no way merge, the imposition of consecutive maximum sentences for the acts committed here is an instance of multiplying offenses so as to impose excessive and unfair punishment.

The guilty plea hearings were inadequate to show that the pleas were knowingly and intelligently entered; the burden of proving their validity shifted to the Commonwealth. The Commonwealth's evidence did not establish appellants' understanding of the charges against them or of the consequences of pleading. Even assuming that appellants had the burden of proving invalidity, in my judgment that burden was sustained. Appellant's contentions of lack of understanding were not overcome. Further, the plea hearings were misleading: the court, having in mind the unprecedented maximum sentences that it ultimately imposed four days later, should not have accepted a waiver of the constitutional right to adversary proceedings.

I would reverse the order of the court below, and grant new trials.

CERCONE, J., joins in this dissenting opinion.