Commonwealth *v.* Belgrave et al., Appellants.

Argued March 17, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, POMEROY and BARBIERI, JJ.

*Garland D. Cherry*, with him *Carmen P. Belefonte*, and *Kassab, Cherry, Curran and Archbold*, for appellants.

*Bernard P. Carey, Jr.*, Assistant District Attorney, with him *Ralph B. D'Iorio*, Assistant District Attorney, and *Stephen J. McEwen, Jr.*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE JONES, December 20, 1971:

On October 5, 1968, the Chester High-Sun Valley High football game was disrupted by unruly "sports fans": some spectators refused to stand during the playing of the National Anthem; three spectators were assaulted by a fourth spectator at half-time; many spec-

tators became rowdy and boisterous during the second half; and a Chester High School bandman was viciously attacked by several persons after the game. Sixteen spectators (appellants herein) were arrested and indicted for riot, inciting to riot, public nuisance, common law nuisance, obstructing a public highway, conspiracy and miscellaneous charges. Five of these sixteen spectators were also indicted for the assault upon the band member and a sixth was indicted on several charges stemming from the attack on the three apparently innocent spectators.

Over the objection of all appellants, the court below consolidated all charges. Seeking a severance by indirection, several appellants requested a nonjury trial, which was refused by the court below—"unless everyone is tried non-jury everyone will stand trial by jury." Initially, all sixteen defendants entered pleas of not guilty and the trial commenced on January 20, 1969. However, eight defendants offered guilty pleas during the trial which were subsequently accepted. The jury trial of the eight remaining defendants continued.

Owing to dissimilar allegations as well as procedural differences between the guilty pleaders and the jury-convicted appellants, we will separate our discussion along those same lines.

### Nos. 269-276, January Term, 1971

Appellants, Louis Belgrave, Lemuel Belgrave, Bentley, Coades, Faust, Seth, Wilson and Howard were found guilty by the jury of riot, inciting to riot and conspiracy. Appellant Howard was also found guilty of the assault-related charges involving the band member. Post-trial motions were filed on behalf of the appellants alleging it was error to consolidate appellants' cases and that Commonwealth evidence concerning appellants' refusal to stand during the playing of the Na-

tional Anthem should have been excluded. These motions were denied by the court below and the Superior Court affirmed the judgments of sentence, three judges dissenting. *Com. v. Belgrave,* 217 Pa. Superior Ct. 297, 269 A. 2d 317 (1970). We granted allocatur.

In *Com. v. Kloiber,* 378 Pa. 412, 415, 106 A. 2d 820, 822-23 (1954), *cert. denied,* 348 U.S. 875 (1954), we stated: "The trial judge because of his position and for other obvious reasons has been given a discretion to determine whether a number of bills of indictment should be consolidated and tried together, and his exercise of discretion in such matters will not be reversed by an appellate Court unless there has been a manifest abuse of discretion or a joint trial is so unfair as to be clearly unjust and prejudicial to one or more of the defendants. Especially is a joint trial permissible, if not advisable, when the crimes charged grew out of the same acts and much of the same evidence is necessary or applicable to both defendants: [Citations omitted]." *See, also,* Act of March 31, 1860, P. L. 427, §40, 19 P.S. §785; 23 C.J.S. *Criminal Law* §931 (1961). On these facts, the trial judge abused his discretion by consolidating these cases and refusing the motions for severance as the joint trial was "clearly unjust and prejudicial to one or more of the defendants."

Although there was one riotous scene, the riot may be viewed as the background of two prominent features: the assault on the band member and the assault on the three spectators. Besides the very nature of these two assaults, the amount of evidence introduced by the Commonwealth certainly accentuated these incidents in the jury's mind. Whereas sixteen individuals were arrested, only five were charged in the band member assault and one appellant attacked the spectators and yet police identification testimony tended to link all sixteen with these assaults by references to

"a" group.  Even when identification was more precise, the constant shifting of names presented to the jury might possibly blur the jury's vision.  Quite simply, there is a very real possibility that those appellants having no connection with the assaults were nonetheless prejudiced by that evidence.

While proper instructions might have clarified the jury's thinking, the court's instructions can best be characterized as "too little, too late."  Indeed, the trial court's recitation of the evidence concerning the malicious attack on the three spectators after that individual had pled guilty was both unnecessary and prejudicial to the remaining appellants.  As best stated by Judge SPAULDING in his dissenting opinion, "the complexity of the evidence and the extreme variation in the amount and type of evidence against the various defendants required marshalling the evidence against and for each defendant separately."  217 Pa. Superior Ct. at 302, 269 A. 2d at 319.

### Nos. 277-284, January Term, 1971

In these appeals we are concerned with appellants Barnes, Poteat, Green, Bell, Townsend, Lavender, Clark and Anderson, who entered pleas of guilty to the charges against them.  In accordance with their guilty pleas, all eight were convicted of riot, inciting to riot and conspiracy.  Appellant Clark was convicted of the additional charges of obstructing an officer and assault and battery.  Appellants Lavender, Anderson and Barnes were also convicted of aggravated assault and battery and malicious mischief to real and personal property.  Rather than attack their convictions directly, these appellants sought relief under the provisions of the Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, §1 *et seq.,* 19 P.S. §1180-1 *et seq.* (Supp. 1971), by asserting their pleas were not

knowingly, intelligently and voluntarily entered and that they were denied effective assistance of counsel. Their petitions were denied by the court below and those orders were affirmed by the Superior Court, three judges dissenting. *Com. v. Green,* 217 Pa. Superior Ct. 288, 269 A. 2d 517, 521 (1970). We granted allocatur.

Reflecting Pa. R. Crim. P. §319(a), we stated in *Com. v. Enty,* 442 Pa. 39, 40, 271 A. 2d 926, 926-27 (1971), "the test for the voluntariness of a plea of guilty has been iterated numerous times, although at times in slightly different language, and may be thus stated: To be Constitutionally valid, a plea of guilty must have been voluntarily, knowingly and intelligently made, i.e., *with an understanding of the nature of the charges against him, his right to a jury trial and an awareness of the consequences of his plea.* [Citations omitted]." (Emphasis added) Since appellants' guilty pleas were entered after our decision in *Com. ex rel. West v. Rundle,* 428 Pa. 102, 237 A. 2d 196 (1968), if the recorded colloquy between the trial judge and each appellant is inadequate, the Commonwealth has the burden of proving the guilty pleas were voluntarily, knowingly and intelligently made. *Com. v. Cushnie,* 433 Pa. 131, 249 A. 2d 290 (1969). We believe the recorded inquiry is inadequate.

In each case the colloquy was primarily conducted between each appellant's counsel and the trial judge with very few questions directed to each appellant. Each colloquy began with each counsel stating he informed his client of the charges, the right to trial by jury, the range of sentences, etc., followed by the judge's question to each appellant whether he understood the statement of his counsel. Without impugning the veracity or integrity of the defense attorneys, an attorney's discussion with his client, outside the court's presence, was never intended to provide the basis for an independent, *judicial* conclusion that the accused

understands and admits the specific acts constituting the crime(s) charged. Moreover, in view of the length of sentences imposed, *see* 217 Pa. Superior Ct. 295-96, 269 A. 2d at 524, due process demands that each appellant be fully cognizant of the consequences of his plea.

Although the facts surrounding the plea proceedings are analogous to our recent opinion in *Com. v. Malone,* 444 Pa. 397, 281 A. 2d 866 (1971), that decision is inapposite: (1) the plea in *Malone* was entered in 1956 before our decision in *West;* (2) these appellants did not have a prolonged opportunity to object during a degree-of-guilt hearing; and (3) the validity of these pleas was quickly attacked, albeit collaterally, through the procedures of the Post-Conviction Hearing Act.

As in silent record cases, the inadequate post-*West* colloquies placed the burden on the Commonwealth to prove each guilty plea was voluntarily, intelligently and knowingly entered. We are of the opinion that this burden has not been met.

The orders of the Superior Court are reversed, the judgments of the Delaware County Court of Common Pleas are reversed and new trials are granted.

Mr. Chief Justice BELL and Mr. Justice BARBIERI dissent.

Mr. Justice ROBERTS took no part in the consideration or decision of this case.