## Commonwealth v. Colder

*John J. Crane,* Assistant District Attorney, for Commonwealth.

*Michael W. H. Duncan,* for defendant.

McGOVERN, J., July 15, 1974.—A trial in the above-captioned matter was held before the Hon. Jack Brian and a jury on June 26, 1973, at the conclusion of which the jury found the above defendant, together with his co-defendant, guilty of burglary, larceny, robbery by assault and force, robbery with accomplice or while armed or by violence, assault and battery, violation of the Uniform Firearms Act, pointing a deadly weapon and conspiracy. The Hon. Jack Brian, having left this bench, the undersigned enters this opinion.

A restaurant in the Borough of Marcus Hook was entered by two men, at least one of whom was armed, on January 24, 1973. The men took from the manager of the restaurant some $7,000. A police officer observed the two men as they fled the scene immediately following this incident and saw them enter a red Cadillac automobile with a black top and a damaged left rear fender. Defendant, Colder, and his co-defendant, Ernest Culbreath, were later determined to be the owners of the said red Cadillac. A short time

after the above incident, a red Cadillac was seen to stop in front of the home of the co-defendant Culbreath and two police officers later identified both the defendant Colder, as well as his co-defendant Culbreath. The officers saw them alight from the said car and enter the house. Police arrived a short time later and arrested the co-defendant Culbreath. A search of the automobile in question revealed $1,000 in bills of the same denomination as those stolen from the restaurant. Defendant Colder, was identified by the manager and victim of the said restaurant as one of the two men involved.

Defendant, Mark Colder, now moves for a new trial, arguing three errors in the prosecution of this matter.

I.

I. *Did the trial court err in refusing the dismissal of several indictments?*

Defendant Colder was arrested on March 27, 1973, and a preliminary hearing was held on April 6, 1973. As a result, defendant was bound over on the charges of robbery and conspiracy. The Commonwealth "amended the complaint" by adding to the aforestated charges the offenses of burglary, larceny, receiving stolen goods, assault and battery, aggravated assault and battery, violation of the Uniform Firearms Act and pointing a deadly weapon. These specific charges were never clearly stated at the preliminary hearing. Defendant now claims that, although he apparently signed a waiver to a preliminary hearing, he has been prejudiced by the submission of those charges to the grand jury and subsequent trial and, conviction thereon. We are unable to find a waiver as such in the record; however, we note that the defendant was arraigned and plead not guilty on May 18, 1974, and he then signed each separate bill of indictment indicating

his plea. Defendant was represented actively and thoroughly throughout this matter beginning at the preliminary hearing, including the above-referenced proceedings, and a suppression hearing May 29, 1973. All of these actions transpired well in advance of trial and the alleged waiver apparently occurred at the time the defendant executed his plea of not guilty in writing upon each of the approved true bills containing the said indictments.

It is our opinion from the foregoing, and from a review of the entire record of this matter, that defendant has waived his right to now assert this objection. We find neither a lack of notice as to the factual basis of these added charges, nor an absence of ability or facility to pursue defects at the pretrial stage. Defendant was represented throughout. The specific indictments objected to are founded upon the factual complexion established at the preliminary hearing and no additional testimony was required to substantiate the indictments. Clearly, defendant had notice of that with which he was charged in a manner sufficient to enable him to properly prepare his defense. There is no requirement that every specific detail be proven at the preindictment stage.

However, an overabundance of caution compels us to view defendant's objection in the additional light of whether or not he was, in fact, prejudiced by the added indictments, assuming arguendo that his right to object thereto had not been waived.

Defendant relies heavily upon the Commonwealth v. Rose, 437 Pa. 30, 261 A. 2d 586 (1970), which, while it does discuss the legal theory propounded, is clearly distinguishable from the present case since that matter arose subsequent to a finding of guilty of fornication and bastardy. The trial judge there sat as a committing magistrate and held the defendant

upon a charge of perjury arising from defendant's testimony during the just-concluded trial.

An interesting coincidence arises from this court's earlier consideration of this point of law in the case of Commonwealth v. Kellar, 60 Del. Co. 126 (1972), wherein this same trial judge reasoned that the crux of the issue is that the presentment of charges to a grand jury which had not been brought or heard before a district justice of the peace, amounted to a violation of procedural due process and the court there held such a deprivation existed where a bill of indictment was presented to the grand jury containing charges as to which *no prima facie case had theretofore been made out.* The conclusion, while valid, is not applicable to the issue at hand, since the additional charges were sufficiently supported by testimony at the preliminary hearing and a prima facie case was, in fact, made out at that point. Defendant was present at the preliminary hearing and represented by counsel. The purpose of a preliminary hearing is to make certain that from the facts there presented it is probable an offense has been committed and probable that the defendant is the one who committed it. Such occurred here.

There has been no pretrial hearing, nor were any motions made to quash resultant indictments or to otherwise restrict the scope of the prosecution until the day of trial. We find that defendant effectively waived his right to object to this issue by his written and verbal plea of not guilty at the time of arraignment. There appears sufficient testimony at the preliminary hearing to establish a prima facie case for these charges. Defendant had notice of the subject matter of this prosecution, and the scope thereof, and he was aware of the necessary and available steps that could be taken prior to the trial in order to rectify impro-

priety. We find no substantial prejudice sufficient to warrant a new trial or, indeed, to dismiss these indictments.

II. *Did the trial court err denying defendant's motion to sever?*

The recently adopted Pennsylvania Rule of Criminal Procedure 228(c) and (d) did not change the essence of the law controlling severance of criminal defendants jointly indicted for trial.

The preceding rule, Act of March 31, 1860, P. L. 427, sec. 40, 19 PS §785, also provided that it was within the discretion of the court as to whether or not defendants should be separately tried.

Defendant argues that the evidence directed one to the obvious guilt of his co-defendant, and defendant's conviction occurred only by reason of the taint derived from a joint trial. A thorough review of the record in this matter indicates that there was ample inculpatory evidence against this defendant, and was particularized, including the victim's eyewitness identification of this defendant. Defendant Colder was co-owner of the vehicle used in this robbery, and he was identified as a perpetrator, and he was recognized a very brief time after the robbery, alighting from the vehicle used in the crime. The latter identification was made by police officers, who knew both defendants from prior experience. The foregoing is indicative, not exhaustive, of the evidentiary environment, within which trial judge made his ruling, denying the requested severance.

The law in this regard is thoroughly discussed in the case of Commonwealth v. Belgrave, 445 Pa. 311, 285 A. 2d 448 (1971), which case did hold that the trial judge used his discretion in validating the trial of some 16 defendants, some of whom were charged with riot,

and others of whom were charged with assault. The Belgrave case did little more than confirm the above-stated principles. It should be noted that there were 16 defendants involved in that trial, and a real possibility of confusion on the part of the jury in separating the separate offenses and offenders who had participated in a riot.

The case at bar presents but two defendants who were identified by the victim and against whom direct evidence was produced, with little chance of confusion. We find no such manifest abuse of discretion as the law requires to sustain defendant's position. Consolidation of trials in this matter was appropriate.

III. *Was the revelation by a Commonwealth witness that he viewed photographs and "mug shots" error?*

Defendant's objection presents a rather novel extension of the principles discussed in the matter of Commonwealth v. Allen, 448 Pa. 177, 292 A. 2d 373 (1972), wherein the Supreme Court of Pennsylvania held:

"that after the reference to a photograph the controlling question is *whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity.* A mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference." (Emphasis supplied.)

The victim eyewitness testified that he went to the police station the following day to identify the perpetrators of the crime. The subject of photographs arose on cross-examination, when counsel for the co-defendant inquired whether or not the victim had

picked the *co-defendant's* picture out of a book. The witness responded, he did not identify the *co-defendant*. There were objections made and passing references to "mug shots," which occurred once by the witness and twice in questions by counsel for co-defendant. These brief references, however, transpired in a lengthy exchange wherein, both counsel, the court and witness were involved. The final, and perhaps the most interesting aspect of this matter, is that the witness clearly stated that he was unable to identify any photograph!

The gravamen of the *Allen* decision, supra, is that not only reference to photographic identification is necessary, but also that we must find a prejudicial inference could reasonably arise therefrom, in a juror's mind that this defendant had a prior criminal record. It is impossible for us to draw any such reasonable inference from the record in this case. A juror would be compelled to conclude that there was no picture of defendant, Colder, viewed. That is the uncontroverted testimony. We conclude, therefore, that there has been no error in this regard.

Therefore, we enter the following:

## ORDER

And now, July 15, 1974, defendant's motions for a new trial and arrest of judgment are refused, denied and dismissed.

Defendant is ordered to be produced before this court for sentencing on July 24, 1974, at 10 a.m., in Courtroom No. 1 at the Court House, Media, Pa.