## Commonwealth *v.* Godfrey, Appellant.

Submitted May 26, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*J. Patrick Clark,* for appellant.

*P. Nelson Alexander,* Assistant District Attorney, and *John F. Rauhauser, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE JONES, June 27, 1969:

In April of 1965 appellant was indicted for murder and manslaughter by the York County Grand Jury. When his case came up for hearing, appellant chose to enter a plea of guilty to voluntary manslaughter. The hearing judge accepted the plea without conducting an on-the-record examination of the appellant to determine whether his plea was made intelligently and voluntarily. Appellant has now filed a petition under the Post Conviction Hearing Act in which he alleges that his guilty plea was not entered into voluntarily and intelligently because he was never informed by his counsel or the court of the meaning and consequences of a guilty plea. The court below conducted a hearing after which it held that appellant's plea was made voluntarily and intelligently and thus denied the petition. Appellant has appealed this decision to our Court.

On June 2 of this year, the United States Supreme Court handed down an opinion in which it held that it is reversible error for a trial judge to accept a guilty

plea without an affirmative showing *on the record* that the plea was made intelligently and voluntarily. *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274 [37 Law Week 4474] (1969). If the court or the prosecution does not conduct an on-the-record examination of the defendant before accepting his plea, the plea is vitiated and the defendant is entitled to a new hearing. "It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." (37 Law Week at 4475). There is no question that in the case now before us there was no affirmative showing on the record that appellant's plea was made knowingly and intelligently. Therefore, the question we must answer is whether *Boykin* applies to this case.

Appellant was, of course, sentenced long before *Boykin* was decided, so that we must determine whether *Boykin* must be applied retroactively. In handing down its opinion in *Boykin,* the Court was silent on this question, so that we must make our own determination based on the standards set forth in prior Supreme Court decisions dealing with the retrospective versus prospective application of decisions in the criminal area.

The general principle guiding all such determinations was formulated by the Supreme Court in *Linkletter v. Walker,* 381 U.S. 618, 14 L. Ed. 2d 601 (1965), holding that the search and seizure rule of *Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081 (1961), was to be applied prospectively only. Speaking for the majority, Mr. Justice CLARK stated, "Thus, the accepted rule today is that in appropriate cases the Court may in the interest of justice make the rule prospective. . . . Once the premise is accepted that we are neither required to apply, nor prohibited from applying, a deci-

sion retrospectively, we must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." (381 U.S. at 628, 629) The considerations which should be weighed in the balance in determining whether a decision should be applied prospectively only were spelled out in greater detail by the Court in *Johnson v. New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882 (1966), holding that *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977 (1964), and *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694 (1966) would not be applied retroactively. In *Johnson,* the Court stated, "We must look to the purpose of our new standards governing police interrogation, the reliance which may have been placed upon prior decisions on the subject, and the effect on the administration of justice of a retroactive application of Escobedo and Miranda." (384 U.S. at 727) The majority stressed that "the choice between retroactivity and non-retroactivity in no way turns on the value of the constitutional guarantee involved." (384 U.S. at 728) In holding that *Escobedo* and *Miranda* need not be applied retroactively, the Court pointed out that a defendant who wished to challenge the validity of his confession could still argue that the confession was not voluntary, relying on the long line of Supreme Court decisions striking down coerced confessions. "We emphasize that the question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree. . . . We are thus concerned with a question of probabilities and must take account, among other factors, of the extent to which other safeguards are available to protect the integrity of the truth-determining process at trial." (384 U.S. at 728, 729)

Based on these standards, we hold that *Boykin v. Alabama* should be applied prospectively only. First, a defendant who is not afforded an on-the-record examination is not left without recourse. He is free to argue in a post-conviction proceeding that his plea was not made intelligently and voluntarily and he must be given a hearing on this claim if it is not patently frivolous on the face of the record. Appellant in this case made such a claim and was afforded a hearing. Furthermore, we have held that in all cases tried after January 3, 1968,[1] if an on-the-record examination of the defendant is not conducted, the burden of proof in the post-conviction hearing shifts to the Commonwealth to prove that the plea was entered knowingly and voluntarily. *Commonwealth v. Cushnie,* 433 Pa. 131, 135, 249 A. 2d 290 (1969).

Second, and most important, it is staggering to the imagination to contemplate the chaos which would result if *Boykin* were applied retrospectively. The overwhelming majority of all convictions result from guilty pleas. In a great many of these cases, inadequate *on-the-record* examinations were conducted. This would mean that countless cases would have to be retried if *Boykin* were applied retroactively. We can only underscore the statement of Mr. Justice STEWART in *Tehan v. Shott:*[2] "To require all these States [which still permitted comment on the accused's failure to take the stand when *Griffin* was decided] now to void the con-

---

[1] The date on which we handed down our opinion in *Commonwealth ex rel. West v. Rundle,* 428 Pa. 102, 237 A. 2d 196 (1968), setting forth the standards for on-the-record examinations of defendants who plead guilty.

[2] 382 U.S. 406, 15 L. Ed. 2d 453 (1966) (holding that the *Griffin v. California,* 380 U.S. 609, 14 L. Ed. 2d 106 (1965) rule prohibiting comment on the accused's failure to testify is to be applied prospectively only).

viction of every person who did not testify at his trial would have an impact upon the administration of their criminal law so devastating as to need no elaboration." (382 U.S. at 419)[3] We hold, therefore, that *Boykin* is to be applied only to cases tried after June 2, 1969.[4]

We turn now to the merits of appellant's position. Appellant testified at his post-conviction hearing that he was merely told that if he pleaded guilty he would receive a four-year prison sentence, that he was never informed that by pleading guilty he was admitting his guilt and that he was never told that he had a right to stand trial. Appellant's lawyer then denied each of these statements and stated that he fully informed the appellant of the consequences of his plea and that he had a right to stand trial if he chose to plead not guilty. The lawyer advised his client to plead guilty to voluntary manslaughter on the strength of the Commonwealth's case.

The hearing judge chose to believe the lawyer's version as to what transpired. On the face of this record we cannot fault this decision. Since the issue at the hearing was solely one of credibility, our scope of review is extremely limited. We cannot say that the

---

[3] *See also: Johnson v. New Jersey, supra,* at 731; *Linkletter v. Walker, supra,* at 637, 638.

[4] Our conclusion is reinforced by two recent United States Supreme Court decisions. In *McCarthy v. United States,* 394 U.S. 459, 22 L. Ed. 2d 418 [37 Law Week 4285] (April 2, 1969), the Court held that a hearing judge's failure to comply with the guilty plea inquiry procedure outlined in Rule 11 of the Federal Rules of Criminal Procedure necessitated a reversal of the conviction and a new trial rather than an evidentiary hearing on the voluntariness of the plea. In *Halliday v. United States,* 394 U.S. 831, 23 L. Ed. 2d 16 [37 Law Week 3419] (May 5, 1969), the Court held that *McCarthy* was to be applied prospectively only for reasons similar to those we have advanced today.

hearing judge abused his discretion in choosing to believe the lawyer's testimony.[5]

Order affirmed.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

While agreeing with the result reached by the majority, I do so under a somewhat different view of *Boykin v. Alabama.* I see the issue before us as one of substantive effect, not retroactive application. In my view, under our procedure, we need never overturn a guilty plea *simply* because there was no on-the-record inquiry *at the time* the plea was entered, provided that a subsequent record establishes that the plea is otherwise valid. I do not believe that *Boykin* in any way compels a contrary result.

*Boykin,* as I read it, deals with the following situation: at the outset, the trial judge accepted a guilty plea with absolutely no on-the-record inquiry of the defendant as to whether the plea was knowingly and voluntarily entered. The Alabama Supreme Court affirmed, with no further record before it, in effect approving this procedure, at least as a matter of state law. The case then moved on to the Supreme Court of the United States, where that Court was faced with a guilty plea, apparently held valid under state law, that had *no* supporting record as to voluntariness. Under these facts, the Supreme Court of the United States had no choice but to reverse and invalidate the guilty plea.

Contrasted with this is the record which the Supreme Court would receive were they to hear the case now before us. Although there was no on-the-record inquiry of appellant *at* the time his plea was entered,

---

[5] Since appellant was sentenced prior to *West*, we are not concerned with a shift in the burden of proof. See: *Commonwealth v. Cushnie, supra,* at 135.

we *now* have a complete record as to voluntariness which was formed in a PCHA proceeding. Thus after the case left our state system, the Supreme Court of the United States would have before it—as we do now—a full record establishing the validity of the plea. In *Boykin,* the Supreme Court stated that "We cannot presume a waiver of these three important federal rights [those waived by a guilty plea] from a silent record." 37 U.S.L. Week at 4476. Here, however, there is no silent record, and thus no need to *presume* a waiver. Instead there *is* a PCHA record, and an *explicit finding* made *after a hearing* that the plea when entered was knowingly and voluntarily made.

Likewise, even were we to hear this case on direct appeal, either in a case where the plea was entered before *Boykin,* because a prisoner had been adjudged entitled to a direct appeal under *Douglas v. California,* 372 U.S. 353, 83 S. Ct. 814 (1963), or even in a case where the plea was entered after *Boykin,* we would remand for an evidentiary hearing and a determination of whether the plea was knowingly and voluntarily entered. Thus under Pennsylvania procedure, the Supreme Court of the United States would never receive a case in the posture of *Boykin* where there was an affirmance of a sentence after guilty plea although the plea was supported by absolutely *no* record.

I hardly mean to imply that the judge accepting the plea should not make an on-the-record inquiry. This Court has made it clear in the past that that is recommended, and now a necessary procedure. See, e.g., *Commonwealth v. Cushnie,* 433 Pa. 131, 249 A. 2d 290 (1969); *Commonwealth ex rel. West v. Rundle,* 428 Pa. 102, 237 A. 2d 196 (1968). Now, under our rule in *Cushnie,* if a hearing as to the validity of the plea is necessary, and there is no on-the-record inquiry by counsel for prosecution or defense, or by the judge who

accepted the plea, the burden of proof is on the Commonwealth to establish that the plea is valid.

The fact that we require an on-the-record inquiry when a guilty plea is accepted does not, in my view, also require us to automatically wipe out the plea if no such inquiry is made. *Boykin* clearly says that we may not, without *more*, allow the plea to stand. That is what the Alabama Supreme Court did, and it was that action that the Supreme Court of the United States overturned. But where the state system provides a mechanism for fairly establishing a record and determining the validity of the guilty plea, I do not believe that the Supreme Court of the United States meant to—or properly could—mandate a prophylactic rule that the states would be required to follow, to overturn pleas *proven* valid on a *full record*. Clearly the Supreme Court thinks that is the best technique for insuring on-the-record inquiries, see *McCarthy v. United States*, 394 U.S. 459, 89 S. Ct. 1166 (1969). But while F. R. Crim. P. 11, as interpreted by *McCarthy* may be a desirable method of achieving a procedural compliance with the constitutional requirements of a guilty plea, I do not see how the exact form of *relief* can be constitutionally imposed on the states. As long as Pennsylvania guarantees and provides a full and fair procedure for determining the validity of guilty pleas, in my view the Supreme Court of the United States cannot properly and does not in *Boykin* require us to follow a rule that it would opt for as a matter of policy or preferred procedure.

I agree with the statement in *Boykin* that an on-the-record inquiry by the judge accepting the plea "forestalls the spin-off of collateral proceedings that seek to probe murky memories." 37 U.S.L. Week at 4476. In support of this proposition, the Court even quoted a Pennsylvania case, *Commonwealth ex rel. West v.*

*Rundle,* supra. Yet although I obviously agree with this statement, I do not take it to mean that state hearing procedures for determining the validity of guilty pleas are inherently unreliable. I would find this position to be wholly untenable and unsupported in fact or law and I cannot accept it as constitutionally requiring the automatic overturn of guilty pleas where an on-the-record inquiry by counsel or the judge accepting the plea is absent. This would call into question the basic reliability of the entire state constitutional fact finding process, a position inconsistent with our general theory of criminal review in the federal system. See, e.g., *Jackson v. Denno,* 378 U.S. 368, 84 S. Ct. 1774 (1964); *Fay v. Noia,* 372 U.S. 391, 83 S. Ct. 822 (1963). Yet without a judgment that the state hearing procedures for determining the validity of guilty pleas in these cases are inherently unreliable, it is clear to me that the Supreme Court cannot mandate that the prophylactic rule of *Boykin* bind the states.

In summary, I would hold that as long as Pennsylvania procedure provides a mechanism for the full and fair determination of the validity of a guilty plea, based on a record—developed at the time of the plea or thereafter—sufficient for adequate state and federal review, we are not compelled to automatically overturn guilty pleas under *Boykin v. Alabama,* merely because the judge accepting the plea failed then to make the requisite on-the-record inquiry.

Mr. Chief Justice BELL and Mr. Justice POMEROY join in this opinion.