Commonwealth *v.* McNeill, Appellant.

Argued May 3, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

reargument refused August 13, 1973.

*Samson B. Bernstein,* with him *Bernstein & Gembala,* for appellant.

*Peter J. Smith,* Assistant District Attorney, with him *James T. Ranney* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, May 23, 1973:

On September 12, 1972, Jerry McNeill, appellant, represented by counsel, pled guilty to the charge of murder generally and aggravated assault and battery. Prior to acceptance of the plea by the lower court, defense counsel and the Assistant District Attorney conducted an extensive on-the-record colloquy with appellant. The court, in the presence of the appellant, was advised that the plea was negotiated. In return for the plea, the Commonwealth certified that the charge of murder rose no higher than murder in the second degree and recommended a prison term of seven and one-half to fifteen years for the murder charge and a concurrent sentence on the aggravated assault and battery charge. On October 10, 1972, appellant appeared before the lower court for sentencing. The terms of the plea bargain were again stated. The court then imposed a sentence of six and a half to fifteen years on the murder charge and one to three years on the assault and battery charge to run concurrently. This appeal followed.

The prosecution arose out of the fatal shooting of Leon Harvey (decedent) and the injury by shooting of Mrs. Mary Dew at approximately 1:15 a.m. on January 4, 1972, at Mrs. Dew's home in Philadelphia. According to Mrs. Dew, appellant was a former boyfriend who kept coming to her home. On this particular evening she was in the second floor front bedroom with decedent when appellant entered the house on the first

floor. Hearing someone coming in, she went to her son's room. Appellant walked by this room heading for the front bedroom. Mrs. Dew then heard appellant say to the decedent, "Who are you, who are you?" Decedent replied by asking the same question. Mrs. Dew heard shots and ran into the front bedroom screaming, where she was shot in the arm by appellant. She then ran out of the house and last saw appellant walking down the street.

Appellant's statement to the police was that he entered the home and heard noises as he walked up the steps to the second floor. He then went downstairs and got a hand gun that he had hidden in between the cushions on the sofa. He admitted shooting the decedent but did not remember shooting Mrs. Dew.

It is well established that where a defendant pleads guilty and is convicted of murder in the second degree he waives his right to challenge anything but the voluntariness of his plea and the legality of his sentence. *See, e.g., Commonwealth v. Zanine,* 444 Pa. 361, 282 A. 2d 367 (1971); *Commonwealth v. Dillinger,* 440 Pa. 336, 269 A. 2d 505 (1970). The legality of appellant's sentence is not at issue and, therefore, our only inquiry is as to the voluntariness of his plea. Appellant contends that his guilty plea was not voluntarily, knowingly and intelligently made because of his illiteracy and because the colloquy at the time of the plea did not include a specific reference to the maximum sentence that could have been imposed.

Before accepting a guilty plea a court, by conducting an on-the-record colloquy of the defendant, must determine whether the plea is voluntarily and knowingly made. *Boykin v. Alabama,* 395 U.S. 238 (1969); *Commonwealth v. Maddox,* 450 Pa. 406, 300 A. 2d 503 (1973); *Commonwealth v. Hollenbaugh,* 449 Pa. 6, 295 A. 2d 78 (1972); *Com. ex rel. West v. Rundle,* 428 Pa. 102, 237 A. 2d 196 (1968); Pa. R. Crim. P.

319(a), 19 P.S. Rule 319(a) (Supp. 1972-73). In *Commonwealth v. Enty*, 442 Pa. 39, 40, 271 A. 2d 926, 927 (1971), this Court stated: "To be Constitutionally valid, a plea of guilty must have been voluntarily, knowingly and intelligently made by defendant, i.e., with an understanding of the nature of the charges against him, his right to a jury trial and an awareness of the consequences of his plea. Commonwealth v. Roundtree, 440 Pa. 199, 269 A. 2d 709; Commonwealth v. Cottrell, 433 Pa. 177, 249 A. 2d 294; Commonwealth ex rel. Barnosky v. Maroney, 414 Pa. 161, 199 A. 2d 424; Commonwealth ex rel. West v. Rundle, 428 Pa. 102, 237 A. 2d 196; Boykin v. Alabama, 395 U.S. 238, 242."

In carefully reviewing the on-the-record colloquy, we were unable to find anything to support appellant's contention that his illiteracy prevented him from knowingly and intelligently pleading guilty. His illiteracy was brought to the court's attention during the extensive colloquy. The court, mindful of appellant's lack of a formal education, directed specific questions to appellant to ascertain his awareness and comprehension. In addition, both defense counsel and the Assistant District Attorney repeatedly asked appellant if he understood various specific aspects of the colloquy and he at all times indicated that he understood these matters. In determining the constitutional validity of appellant's plea, we are not merely concerned with whether he was able to read or write but whether, at the time of his plea, he was able to comprehend his position and understand what was happening. *See Commonwealth v. Mitchell*, 441 Pa. 226, 272 A. 2d 474 (1971); *Commonwealth v. Moore*. 440 Pa. 86, 270 A. 2d 200 (1970). His illiteracy did not preclude him from understanding the nature and consequences of his plea, especially since the questions asked and advice given appellant were oral rather than written.

As to appellant's claim that his plea was invalid because he was not specifically told the maximum sentence, we note that questioning or advising a defendant as to the permissible range of sentences is an important element of the guilty plea colloquy. *United States v. Vermeulen,* 436 F. 2d 72 (2d Cir. 1970); *United States ex rel. Crosby v. Brierley,* 404 F. 2d 790, 794-5, n. 6 (3d Cir. 1968); *Commonwealth v. Martin,* 445 Pa. 49, 282 A. 2d 241 (1971); *Com. ex rel. West v. Rundle,* 428 Pa. 102, 237 A. 2d 196 (1968); Pa. R. Crim. P. 319, Comment (effective March 28, 1973); ABA Standards Relating to Pleas of Guilty, Section 1.4(c) at 25-27 (Approved Draft, 1968). However, omission of such a question from the colloquy does not *per se* invalidate the plea.

The guilty plea colloquy must be considered in light of the overall objective which is to insure that the plea is made with an understanding of the charges and an awareness of the consequences. *Com. v. Enty,* 442 Pa. 39, 271 A. 2d 926 (1971). In this case, the surrounding circumstances, particularly the existence of the plea agreement, indicate that appellant was able to plead knowingly and voluntarily even though he was not specifically told the maximum sentence.

The terms of the agreement were stated for the record during the course of the colloquy and at the time of sentencing. It is abundantly clear from the record that appellant's plea was entered in complete awareness of the terms of the agreement and the sentence recommendation. Appellant was also aware that the court was not obligated to accept the Commonwealth's recommendation. Had the court not accepted the recommendation appellant would have been given an opportunity to withdraw his plea pursuant to Rule 319(b)(3). Therefore, considering the existence of the on-the-record plea agreement, together with appellant's right to withdraw the plea if the court decided

not to concur in the plea agreement, we conclude that appellant was more than adequately protected from unknowingly pleading guilty. Moreover, appellant was not prejudiced as a result of not being told the maximum sentence since he actually received a sentence lighter than the one recommended. *Cf. Commonwealth v. Hart,* 440 Pa. 175, 269 A. 2d 740 (1970).

Judgment of sentence affirmed.

Mr. Justice NIX took no part in the consideration or decision of this case.