**Daniel KNIGHT, Appellant,**

v.

**STATE OF MINNESOTA, Appellee.**

No. 73–1137.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1973.

Decided July 20, 1973.

Luther A. Granquist, Minneapolis, Minn., for appellant.

Theodore Rix, Asst. County Atty. of Hennepin County, Minneapolis, Minn., for appellee.

Before Mr. Justice CLARK,* HEANEY and BRIGHT, Circuit Judges.

CLARK, Associate Justice.

In this habeas corpus action Knight challenges the validity of state conviction and sentence on a charge of theft by check of an amount in excess of $100.00. Minn.Stat. § 609.52, subd. 2(3). Originally he was charged on November 18, 1967, with aggravated forgery in violation of Minn.Stat. § 609.625, subds. 1 and 3, to which he pleaded not guilty. On December 6, 1967, Knight appeared before the court with his privately retained counsel and entered a guilty plea to the lesser degree crime of theft by check. The trial court accepted the plea, finding it voluntarily and freely made. However, on January 9, 1968, when his case came on for sentencing, Knight sought leave of the court to withdraw his plea on the ground that he had neither signed nor seen the check involved and, therefore, was not guilty of the charge. The court held a private conference in chambers with the prosecutor and Knight's counsel and thereafter denied Knight's motion to withdraw his plea; it then sentenced him to a term of 0–5 years to be served consecutively to a previously imposed sentence. Knight appealed and the Minnesota Supreme Court remanded the case for a post-conviction hearing. Post-conviction relief was denied and the Minnesota Supreme Court affirmed. 292 Minn. 419, 192 N.W.2d 829 (1971). This habeas corpus application was then filed and the District Court below denied relief. Apparently Knight is still being held under the sentence here challenged. In light of certain inadequacies in Knight's guilty plea hearing and sentencing appearance, we believe that Knight is entitled to a full hearing in the District Court on his claims that his guilty plea was not made with knowledge of the elements of the crime charged and that he was denied the effective assistance of counsel.

1. *Factual Background:*

The basic facts upon which our decision turns appear undisputed. Two girls, Vicki Gottrey and Sheila Spence Smith, purchased a pair of men's alliga-

---

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, is sitting by designation.

tor shoes at a certain Florsheim Shoe Shop on October 11, 1967. They paid with a forged check in the amount of $115. Knight later either "took" the shoes or the girls gave them to him. Knight exchanged the shoes for another pair at the same price but which were of the style and size that he preferred. Police officers had an old arrest warrant for one of the girls, and they traced her to an apartment where they found Knight, the two girls and another man. The alligator shoes were on the floor. All four individuals were arrested, the shoes were seized, statements were taken and a charge of aggravated forgery was filed against Knight. He pleaded not guilty and filed a motion to suppress the shoes and his statement, arguing that the officers entered the apartment illegally and arrested him without probable cause. On December 6, 1967 the aggravated forgery charge was dismissed and the theft by check charge was filed to which Knight pleaded guilty. At a hearing he admitted under oath that he entered the plea of guilty of his "own free will and volition", knowing that he could be sentenced to a term up to five years in the State Penitentiary; that he had "discussed the matter on numerous occasions" with his retained attorney; that "on the night of October 11, 1967, at Brookdale Shopping Center . . . a check [was] given the Florsheim Shoe Shop"; that he was "not the person who wrote the check or gave the check"; but that "he knew that the check was a forged check" and "did not belong to the person who gave it"; that "the person who did pass the check . . . got a pair of alligator shoes"; that he "took the alligator shoes the next day and knowing that she had obtained it by a bad check"; and that he "knowingly took the shoes that were given to you from this purchase and exchanged them for another pair of shoes." Knight also admitted that by his plea of guilty that he was waiving his right to question the entry into the apartment, the seizure of the shoes and the validity of his statement in connection therewith. Knight also testified that his retained counsel had "competently and conscientiously advised and represented . . . . [him] throughout this matter." At the same hearing and on application of his counsel, Knight's bail bond was reduced from $5000 to $2000 without objection from the State.

At his January 9, 1967 appearance for sentencing Knight stated that he had discussed his case with another lawyer and wanted to withdraw his guilty plea. The court announced a brief recess at which point Knight's retained counsel stated that "before doing that, may I put on the record that I didn't know anything about this", and the judge replied, "I kind of gathered that." The judge, Knight's counsel and the prosecutor then went into the judge's chambers. When they returned the judge asked Knight the name of the other attorney he had consulted, and Knight gave the court his name and said that they had discussed the case two days before. The judge then announced that he had read the transcript of the guilty plea hearing and that Knight's motion to withdraw the guilty plea was denied. The judge asked Knight if he had anything to say before sentence was imposed. Knight replied:

"Well, I am not guilty of the charge. The State's own witnesses said that two girls came in there and bought a pair of shoes, not I. I haven't signed a check. I haven't even seen a check."

The state then announced: "it isn't our contention that he passed this check. The contention is, and the plea of guilty shows, that he was a part of the conspiracy to steal by means of a false bank check over one hundred dollars." Knight's retained counsel, upon being asked if he wished to say anything before sentence was imposed said:

"Mr. Cohen. Yes, Your Honor, I think I should clarify the record and also make a record to the effect that I was not apprised to Mr. Knight's desire to change or withdraw his plea of guilty until this morning, or until such time as he took the stand. I also should add in this particular case I

represented Mr. Knight from the inception of the case, that there was a preliminary hearing in Municipal Court which I represented him and that subsequent to that I had numerous conferences with the county attorney's office; and I should point out for the record that the initial charge was forgery which carried a term of ten years, but after discussions with the county attorney and pursuant to papers filed with the Court and in the Court file, the county attorney agreed to reduce the charge to theft by check which carries a maximum of five years.

"I feel under the circumstances, Your Honor, that the defendant was represented—I represented the defendant adequately and kept him informed at all times of what was going on and what the situation was. I think the Court is aware of the fact, and the record shows, that the questions asked at the plea of guilty were those put to the defendant by myself and that the defendant answered the questions in the affirmative and admitted his guilt.

"I can't help what advice the defendant received in jail outside of my presence, Your Honor, and I would ask the Court to ignore that and refer to the original report and all reports on this defendant in making its sentence, and ignore anything that happened today with regard to the imposition of sentence."

The court then sentenced Knight to an indeterminate, five-year maximum sentence at the St. Cloud Reformatory for Men.

### 2. The Guilty Plea Hearing of December 6, 1967:

We have carefully studied the record of this hearing and conclude that it leaves much to be desired. Although the prosecutor did not claim that Knight passed the check but "that he was a part of the conspiracy to steal by means of a false bank check over one hundred dollars", we find no reference to any conspiracy in the record of December 6th. Knight was not queried about his knowledge of a conspiracy, the members composing it or any overt acts resulting therefrom. Indeed, the questions seem to skirt any mention of Vicki Gottrey and Sheila Spence Smith, who apparently passed the check. It is true that Knight admitted knowing that the check was forged when he took the shoes, but this alone was not sufficient to bring him within the offense charged. His receipt of the shoes merely indicated that he might have been an accessory after the fact, not an offense in Minnesota. State v. Matousek, 287 Minn. 344, 348, 178 N.W.2d 604 (1970); State v. Lyons, 144 Minn. 348, 175 N.W. 689 (1919). It appears strange to us that neither counsel, the prosecutor nor the judge developed the basic element necessary to the charge, i. e., Knight's participation in a conspiracy.

Knight's right to plead not guilty was taken from him—even though he demanded it—despite the Supreme Court's admonition that the courts should exercise the "utmost solicitude" in making sure that the accused "has a full understanding of what the plea connotes and of its consequences." Boykin v. Alabama, 395 U.S. 238, 243–244, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). Although we have held that Boykin's requirement that the record affirmatively show that a guilty plea was voluntarily and understandingly made is not retroactive, Meller v. Missouri, 431 F.2d 120 (8 Cir. 1970), the necessity that courts approach guilty pleas with "utmost solicitude" is to some extent inherent in the traditional concept of due process. See also Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (Douglas, J., concurring; Marshall, J., concurring and dissenting).

### 3. The Sentencing Proceeding of January 9, 1968:

We are also disturbed by Knight's claim that he lacked the effective assistance of counsel at the hearing of January 9, 1968, when he attempted to with-

draw his plea. It appears clear that he had no support from his counsel in this regard. Knight had advised the court that he was dissatisfied with his counsel and had sought the advice of another. Still his original counsel told the court that he was surprised at Knight's request; that he had "represented the defendant adequately" and had obtained the agreement on the lesser offense. At no time did he speak on behalf of Knight's request to withdraw his plea; on the contrary he gave every evidence of being against that course. Nor did counsel speak on Knight's behalf with regard to the appropriate sentence. Subsequently the court imposed a maximum sentence consecutive to one already being served.

Four factors weigh heavily against the action of the court in refusing to allow Knight to withdraw his plea: (1) the inadequacy of the plea of guilty hearing of December 6th; (2) the failure of counsel to support Knight in his offer to withdraw his plea; (3) the failure of the court to hold a hearing on the motion to withdraw the plea; and (4) counsel's apparent distraction from his duty to represent Knight on the issue of sentencing by his concern over justifying his past handling of the case.

### 4. The Post-Conviction Hearing:

The State seems to say that all of these defects were cured by the subsequent post-conviction hearing held on March 9, 1970. However, we find the post-conviction hearing of little assistance since that court made no findings on the issue of whether Knight's guilty plea was knowingly and intelligently made. There is no indication in the post-conviction transcript that Knight entered his guilty plea with knowledge of the elements of the offense charged; on the contrary, the only evidence on this point was Knight's testimony that he did not understand the elements of theft by check. Resolution of this issue is crucial in view of the fact that the guilty plea transcript was insufficient on its face to support acceptance of the plea. Although the state post-conviction court did find that Knight was adequately represented by counsel "at all proceedings in this Court up to and including conviction," our study of the transcripts of the guilty plea hearing and especially the sentencing proceedings leaves us with serious doubt as to the correctness of this ruling.

The State's reliance on United States v. Rawlins, 440 F.2d 1043 (8 Cir. 1971), is misplaced. The Court there upheld the trial court's refusal to permit the accused to withdraw his guilty plea even though " . . . there remained a slight possibility that the defendant may not have understood all of the essential elements of the crime." In *Rawlins* the defendant's counsel actively supported his client's effort to withdraw his plea. Furthermore, the motion was deferred for a hearing which encompassed the issue of defendant's understanding of all the elements of the crime. In the present case Knight apparently had neither the assistance of his counsel in attempting to withdraw his plea nor a hearing on whether he understood the essential elements of the crime when he entered his guilty plea on December 6, 1967.

In light of these considerations, the judgment is reversed and the case remanded for a full hearing on whether Knight had the effective assistance of counsel and whether his guilty plea was knowingly and intelligently made.

Reversed and remanded.