356 A.2d 346

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Lloyd MINOR.**

Supreme Court of Pennsylvania.

Argued Oct. 21, 1975.

Decided March 17, 1976.

Rehearing Denied April 19, 1976.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., James A. Shellenberger, Philadelphia, for appellant.

Edward Griffith, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

On July 4, 1971, appellee Lloyd Minor was arrested and charged with aggravated robbery and carrying a concealed deadly weapon. On June 19, 1972, his pleas of guilty to both charges were accepted. During the collo-

quy which preceded the pleas, there was no explanation of either the elements which made out the crimes charged or of the relationship of the facts of appellee's case to those definitions. The only mention of the charges at the guilty plea hearing was:

"Q.  [by defense counsel] Do you [Minor] understand the charges which you appear at the bar of the Court to wit: Aggravated Robbery and C.C.D.W., that you have an absolute right to have this matter heard by a jury?

A.  [by Minor] Yes."

Following imposition of sentence, appellee appealed to the Superior Court, alleging that the failure to explain the elements of the crimes charged rendered the pleas unknowing and unintelligent. That court reversed the judgment of sentence, finding appellee's contention to be meritorious. The Superior Court, however, reversed not because the colloquy failed to satisfy *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974), decided after appellee's guilty plea was accepted, which requires that the elements of the crimes charged be explained to a defendant who is about to plead guilty, but because the plea colloquy failed to satisfy pre-*Ingram* standards and rule 319(a).[1]

The Commonwealth requested and was granted permission to file an appeal [2] to this Court to determine (1)

1.  Pa.R.Crim.P. 319(a) provides:
    "(a) *Generally.* A defendant may plead not guilty, guilty, or, with the consent of the court, nolo contendere. The judge may refuse to accept a plea of guilty, and shall not accept it unless he determines after inquiry of the defendant that the plea is voluntarily and understandingly tendered. Such inquiry shall appear on the record."

2.  See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204, 17 P.S. § 211.204 (Supp.1975).
    On May 5, 1975, this Court entered the following order on the Commonwealth's petition for allowance of appeal from the Superior Court:
    "Petition for allowance of appeal granted. The case is directed to be argued with *Commonwealth v. Schork,* 467 Pa. ——,

whether *Ingram* controlled appellee's case, (2) if *Ingram* did not control appellee's case, whether the plea colloquy satisfied pre-*Ingram* standards, and (3) what the remedy should be if it is determined that a plea colloquy is inadequate to show a valid guilty plea. The issue has resolved itself to whether *Ingram* announced new law. We hold that it did not and, therefore, find that pre-*Ingram* and post-*Ingram* standards for guilty plea colloquies are the same. Accordingly, we affirm the order of the Superior Court reversing appellee's judgment of sentence.

### I.

In Pennsylvania, even before we decided *Ingram*, it has been the law that an understanding of the elements of the offense charged is necessary to an intelligent, knowing and voluntary guilty plea.

In *United States ex rel. McDonald v. Pennsylvania*, 343 F.2d 447, 451 (3d Cir. 1965), the third circuit stated that in Pennsylvania "the question whether the plea of guilty is voluntarily and intelligently made can only be determined if it is shown on the record what comprehension the accused had of the nature and elements of the charge against him . . . ."

In *Commonwealth ex rel. West v. Rundle*, 428 Pa. 102, 237 A.2d 196 (1968), we suggested that trial courts make

356 A.2d 355, and the parties are directed to brief and argue the following questions:
(1) Is the standard for the adequacy of a plea colloquy to satisfy Pa.R.Crim.P. 319(a) articulated in *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974), applicable to cases not yet final on appeal in which the plea was entered prior to the decision in *Ingram*?
(2) If the standard articulated in *Ingram* is not applicable, did the colloquy in this case satisfy the requirements of Rule 319(a) under the appropriate pre-*Ingram* standard?
(3) Should the remedy of automatic reversal for failure to satisfy the requirements of Rule 319(a) (under whatever standards those requirements are applied) be applied to cases not yet final on appeal in which the plea was entered prior to the decision in *Ingram*?

PER CURIAM"

a record which adequately reflects, inter alia, the defendant's understanding of the offense charged.[3] Since that decision we have frequently indicated that such an understanding is essential to a valid guilty plea. See *Commonwealth v. Cushnie*, 433 Pa. 131, 134–36, 249 A.2d 290, 292 (1969) (listing defendant's knowledge of elements of crime as aspect of voluntariness of plea); *Commonwealth v. Enty*, 442 Pa. 39, 40, 271 A.2d 926, 927, cert. denied, 402 U.S. 913, 91 S.Ct. 1396, 28 L.Ed.2d 656 (1971) ("understanding of the nature of the charges" an aspect of voluntariness); *Commonwealth v. Belgrave*, 445 Pa. 311, 317, 285 A.2d 448, 450 (1971) (quoting *Enty*); *Commonwealth v. Jenkins*, 449 Pa. 398, 296 A.2d 926 (1972) (Court satisfied itself that defendant knew elements of both crime charged and other forms of homicide in sustaining voluntariness of guilty plea); *Commonwealth v. Maddox*, 450 Pa. 406, 412, 300 A.2d 503, 506 (1973) ("Review of the record satisfies us that the appellant was aware of the nature of the offense with which he was charged and that he understood that his acts constituted that offense"); *Commonwealth v. Jackson*, 450 Pa. 417, 419, 299 A.2d 209, 210 (1973) ("Review of the colloquy . . . satisfies us that the trial judge properly determined that appellant pleaded guilty with an understanding of the nature of the charge and how his acts constituted the offense with which he was charged"); *Commonwealth v. Campbell*, 451 Pa. 465, 468, 304 A.2d 121, 122 (1973) ("The crucial elements of the offense . . . were sufficiently conveyed to appellant"); *Commonwealth v. McNeil*, 453 Pa. 102, 106, 305 A.2d 51, 54 (1973) ("The guilty plea colloquy must be considered in light of the overall objective which is to ensure that the plea is made with an understanding of the charge and an awareness of its consequences").

**3.** The "suggestion" was not that an understanding of the elements of the crime charged might be essential to a valid guilty plea, but rather that this essential element be determined and recorded at the guilty plea hearing.

■ These cases demonstrate that the defendant's understanding of the nature and elements of the charges against him has long been an essential part of a valid guilty plea in Pennsylvania. In this respect *Ingram* cannot be said to be new law.[4] A reading of *Ingram* itself reveals that it was not, and was not intended to be, a statement of new law:

"The revised comments to Rule 319, paragraph (a), specifically recommend that [appellant understand the nature of the charges to which he pleaded guilty as one of] three points [to] be among those 'minimum' points covered in the examination of the defendant. While we have not yet voided a plea because the presumption of innocence was not mentioned to a defendant, we have indicated that a factual basis for the plea must be demonstrated and that the defendant must understand the nature of the charges to which he is pleading. See *Commonwealth v. Campbell*, . . . ; *Commonwealth v. Jackson*, . . . ; *Commonwealth v. Maddox*, . . . . This is consistent with the comment to paragraph (a) of Rule 319 which suggests that the rule was intended to codify the 'preferred practice' suggested by our decisions in *Commonwealth ex rel. West v. Rundle*, . . . and *Commonwealth v. Belgrave*, . . . . This 'preferred practice' (which is now 'mandatory practice' under Rule 319) was that the trial court should 'conduct an on the record exami-

---

4. Because *Ingram* announced no new law, we are not presented with its application or nonapplication to cases not yet final when it was decided.

Similarly, we decide that pre-*Ingram* and post-*Ingram* standards are the same, therefore the second issue is not really presented.

Finally, the third issue, the remedy to be applied when the guilty plea colloquy is found to be inadequate to show a voluntary plea has been determined to be reversal of the tainted conviction and remand for a new trial. This remedy was reaffirmed recently in *Commonwealth v. Rodgers*, 465 Pa. 379, 350 A.2d 815 (1976); *Commonwealth v. Mack*, 466 Pa. 12, 351 A.2d 278 (1976); *Commonwealth v. Jasper*, —— Pa. ——, —— A.2d —— (1976); *Commonwealth v. Thompson*, 466 Pa. 15, 351 A.2d 280 (1976).

nation of the defendant which should include, inter alia, an attempt to satisfy itself that the defendant understands the nature of the charges . . . ."

*Commonwealth v. Ingram*, 455 Pa. 198, 201, 316 A.2d 77, 79 (1974).

This conclusion is strengthened by examination of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L. Ed.2d 274 (1969), which set forth the constitutional requirements for a valid guilty plea colloquy.[5]

## II.

Boykin plead guilty[6] to five counts of common law robbery, and was sentenced, by a jury,[7] to death on each of the five counts. On direct appeal, the Alabama Supreme Court affirmed the judgments and sentences.[8] The United States Supreme Court granted certiorari and reversed stating: "It was error, plain on the face of the record, for the trial judge to accept [Boykin's] guilty plea without an affirmative showing that it was intelligent and voluntary."[9]

5. *Boykin*, a fourteenth amendment decision, is of course binding on the states. "The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards." 395 U.S. at 243, 89 S.Ct. at 1712.

. 6. The complete record of Boykin's guilty plea hearing is:
"This day in open court came the State of Alabama by its District Attorney and the defendant in his own proper person and with his attorney, Evan Austill, and the defendant in open court on this day being arraigned on the indictment in these cases charging him with the offense of Robbery and plead guilty."
Id. at 245, 89 S.Ct. at 1713.

7. The sole issue for the jury was the punishment Boykin was to receive for the crimes to which he pled guilty. Id. at 240, 89 S. Ct. at 1710.

8. *Boykin v. State*, 281 Ala. 659, 207 So.2d 412 (1968).

9. 395 U.S. at 242, 89 S.Ct. at 1711. [Addendum: On June 16, 1976, subsequent to the filing of the decision in this case, the United States Supreme Court decided *Henderson v. Morgan*, —— U.S. ——, 96 S.Ct. 2253, 48 L.Ed.2d —— (1976). The Court there held that a guilty plea was involuntary where defendant did not re-

The Court failed to specify the precise nature of the required showing. It did, however, emphasize the dual nature of a guilty plea as both a waiver of constitutional rights and an admission of criminal conduct. Further, the Court implicitly recognized that the decision to waive constitutional rights depends, in part, upon the defendant's actual knowledge that he committed the crime charged and the facts which the state would have to prove by competent evidence. To ensure that the defendant has the information necessary to decide intelligently how to plead, the Court suggested that an explanation of the elements of the crime charged and how the facts fit that definition was necessary to an intelligent, knowing and voluntary plea:

> " '[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.' "

395 U.S. at 243 n. 5, 89 S.Ct. at 1712 n. 5, quoting *McCarthy v. United States*, 395 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969) (construing Fed.R.Crim.P. 11 requirements for guilty plea colloquy in federal court).

Finally, the Court recognized that the best and surest way to assure both that the defendant's rights are protected and that the plea is validly taken is to make an adequate record at the plea hearing:

> "What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record

ceive adequate notice of the elements of the offense to which he pleaded guilty. Failure to explain to defendant that intent to cause death is an element of second degree murder invalidated the plea.]

adequate for any review that may be later sought
.   .   .   and forestalls the spin-off of collateral pro-
ceedings that seek to probe murky memories." [10]
Id. at 243–44, 89 S.Ct. at 1712–13.

*Boykin* has been recognized as requiring an on the rec-
ord determination that the defendant understood the na-
ture and elements of the charges against him. The
Eighth Circuit Court of Appeals interpreted *Boykin* as
holding that:

"an on the record examination conducted by the trial
court accepting a guilty plea which includes, inter alia,
an attempt by that Court to satisfy itself that the de-
fendant understands the nature of the charges
.   .   . [and] acts sufficient to constitute the offens-
es for which he is charged  .   .   . is sufficient to
insulate the plea [in state court] from subsequent at-
tack in collateral proceedings [in federal court]."

*Missouri v. Turley,* 443 F.2d 1313 (8th Cir. 1971).[11]

A commentator writing in the Harvard Law Review
stated:

"Thus [the language] 'what the plea connotes' [in
*Boykin*]  .   .   . seems to refer—as does Federal
Rule 11—to an understanding of the nature of the
charge itself. The *McCarthy* Court specified that this
rule 11 requirement is satisfied only if the record

---

**10.** The Supreme Court quoted *Commonwealth ex rel. West v.
Rundle,* 428 Pa. 102, 105–06, 237 A.2d 196, 197–98 (1968):
"A majority of criminal convictions are obtained after a plea
of guilty. If these convictions are to be insulated from attack,
the trial court is best advised to conduct an on the record ex-
amination of the defendant which should include, inter alia, an
attempt to satisfy itself that the defendant understands the na-
ture of the charges, his right to a jury trial, the acts sufficient
to constitute the offenses for which he is charged and the per-
missible range of sentences."

**11.** See also *Knight v. Minnesota,* 484 F.2d 104, 106 (8th Cir.
1973); *Stinson v. Turner,* 473 F.2d 913, 915–16 (10th Cir. 1973);
*Majko v. United States,* 457 F.2d 790, 791 (7th Cir. 1972) (rule 11
case); *United States v. Malcolm,* 432 F.2d 809, 812 (2d Cir. 1970)
(rule 11 case).

shows that the defendant understands the 'elements' of the crime to which he is pleading guilty. Since it is hard to imagine that any less might satisfy the [*Boykin*] requirement, the constitutional rule [imposed by *Boykin*] will probably correspond to rule 11." [12]

The commentator went on to say that "the court viewed the [defendant's "understanding of the law in relation to the facts" [13]] as part of the voluntariness and understanding requirement." [14]

The law in Pennsylvania before *Boykin*, and in the rest of the nation after *Boykin* requires that the defendant understand the elements of the crimes charged. This aspect of *Ingram* was not a novel development, but rather a statement of established state and federal law.

██ Because the trial court failed to explain to appellee the nature and elements of the charges against him, and because that failure rendered the plea legally involuntary, we affirm the order of the Superior Court reversing appellee's judgment of sentence.

Order affirmed.

JONES, C. J., did not participate in the consideration or decision of this case.

POMEROY, J., filed a dissenting opinion in which EAGEN, J., joins.

POMEROY, Justice (dissenting).

In my view the standards set forth in *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974), are not applicable to pleas of guilty entered prior to January 24, 1974, the date of the *Ingram* decision. I am also of opin-

12. The Supreme Court, 1968 Term, 83 Harv.L.Rev. 7, 184 (1969).

13. 395 U.S. at 243, 89 S.Ct. at 1712, quoting *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L Ed.2d 418 (1969).

14. Harv.L.Rev., supra note 12, at 185.

240

ion that the colloquy which was conducted in the case at bar prior to the trial court's acceptance of the appellee's pleas of guilty to aggravated robbery and carrying a concealed weapon complied with the law as it stood prior to *Ingram.* Hence, I must dissent from the Court's affirmance of the order of the Superior Court reversing the judgments of sentence and remanding the case for trial.[1]

## I.

In *Commonwealth v. Ingram,* supra, this Court held that a plea of guilty should not be accepted unless the record discloses that "the elements of the crime or crimes charged were outlined in understandable terms."[2] *Ingram,* supra at 204, 316 A.2d at 80. Today the Court concludes that this requirement constituted no new law and therefore that the question of retroactive application of *Ingram* does not arise. With respect, I disagree.

The Court bases its conclusion that no new law was announced in *Ingram* primarily upon decisions of this Court[3] expressing the view that the trial court should

---

1. Preliminarily, I note that the appellee appealed to the Superior Court directly from the judgments of sentence imposed following his pleas of guilty. Since the taking of this appeal, we have several times stated that the proper method of challenging a plea of guilty is to file in the trial court a petition to withdraw the plea. See *Commonwealth v. Lee,* 460 Pa. 324, 333 A.2d 749, 750 n. ——. (1975); *Commonwealth v. Zakrzewski,* 460 Pa. 528, 333 A.2d 898, 900 n. 1 (1975); *Commonwealth v. Starr,* 450 Pa. 485, 301 A.2d 592 (1973). See also my concurring opinion in *Commonwealth v. Rodgers,* 465 Pa. 379, 350 A.2d 815 (1976).

    Since, however, the appellee's challenge to his pleas is directed *solely* to the adequacy of the colloquy and can thus be decided on the record before us, I consider it in order for the Court to reach the merits on this appeal. See *Commonwealth v. Lee,* supra at 326, 333 A.2d at 750 n. ——. See also may concurring opinion in *Commonwealth v. Rodgers,* supra.

2. By "elements" the Court appears to have meant "basic legal elements". See *Commonwealth v. Ingram,* supra at 203, 316 A.2d at 80.

3. *Commonwealth v. McNeill,* 453 Pa. 102, 305 A.2d 51, 53 (1973); *Commonwealth v. Campbell,* 451 Pa. 465, 467, 304 A.2d 121 (1973); *Commonwealth v. Jackson,* 450 Pa. 417, 419, 299 A.2d 209

ascertain that the defendant understands the nature of the offenses to which he is pleading guilty. The Court's reliance upon these cases is misplaced for two reasons. In the first place, none of the cases cited *requires* the trial court *to put on the record* evidence of the defendant's understanding of the nature of the offenses charged. See the opinion of the Court, *ante* at 348 n. 3. As I read the opinions in those cases, they merely indicate that such an understanding is relevant to the question whether a plea of guilty was intelligently entered, and *advise* or *suggest* that showing that the defendant possessed such an understanding may aid in subsequent determinations of the validity of the plea. This reading is supported by the *Ingram* opinion itself in which the Court stated that our decisions in *Commonwealth v. Campbell*, and *Commonwealth v. Jackson*, note 3 supra, merely *"imply"* that an on-the-record showing of the defendant's understanding of the nature of the charges should be made, and concluded that "[w]e *now* expressly hold that there is such a requirement." 455 Pa. at 204, 316 A.2d at 80 (emphasis added). In the second place, contrary to what the Court implicitly suggests, the nature of an offense and an outline of its legal elements are not synonymous; the former is much broader and less specific than the latter. I submit that, at least in some situations, an understanding of the nature of an offense may be inferred from knowledge of the name by which it is called and the seriousness of the consequences of being convicted of it, and therefore that such an understanding may exist in the absence of knowledge of the legal elements of the crime. In *Commonwealth v. Campbell*, 451

(1973); *Commonwealth v. Maddox*, 450 Pa. 406, 408, 300 A.2d 503 (1973); *Commonwealth v. Jenkins*, 449 Pa. 398, 401, 296 A.2d 926 (1972); *Commonwealth v. Belgrave*, 445 Pa. 311, 317, 285 A.2d 448 (1971); *Commonwealth v. Enty*, 442 Pa. 39, 40, 271 A.2d 926 (1971), *cert. denied*, 402 U.S. 913, 91 S.Ct. 1396, 28 L.Ed.2d 656 (1971); *Commonwealth v. Cushnie*, 433 Pa. 131, 133, 249 A.2d 290 (1969); *Commonwealth ex rel. West Rundle*, 428 Pa. 102, 106, 237 A.2d 196 (1968).

Pa. 465, 304 A.2d 121 (1973), for example, we found that the defendant understood the nature of voluntary manslaughter even though the trial judge's explanation of voluntary manslaughter was incorrect and that the term "mens rea" had not been explained to the defendant. It is impossible to believe that this conclusion would be reached by the Court today if a post-*Ingram* plea entered upon an identical record to that in *Campbell* were to come before it. The reason, I submit, is that *Ingram* indeed wrought a change in the law governing the validity of guilty pleas.[4]

In support of the view that *Ingram* announced no new law, the Court also relies upon the decision of the Supreme Court of the United States in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In *Boykin*, the Court had before it a guilty plea which had been entered upon a record which was entirely silent as to the defendant's comprehension of the nature and consequences of his plea. The Court held that, because a guilty plea necessarily involves a waiver of important federal constitutional rights,[5] it should not be accepted in the absence of an on-the-record showing that the defendant understands 'what the plea connotes and  .  .  . its consequences." *Boykin*, supra at 244, 89 S.Ct. at 1712, 23 L.Ed.2d at 280. The Court expressed no view, however, as to what such an on-the-record showing

4.  Appellant does not argue that the *Ingram* decision is merely interpretative of the comment to Rule 319 of our Rules of Criminal Procedure, which recommends that the trial judge ascertain on the record that the defendant understands the nature of the charges against him, and therefore that *Ingram* should apply to all cases in which pleas were entered after the adoption of that comment. Nor would there be any merit in such an argument. The comment merely makes *recommendations* as to the content of guilty plea colloquys, and, as pointed out above, the nature of an offense and its elements are not necessarily the same.

5.  The Court expressly listed the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. *Boykin*, supra at 243, 89 S.Ct. 1709, 23 L.Ed.2d at 279–80.

should include; nor did it impose any affirmative requirement that the trial court convey any specific information to the accused. Indeed, the federal courts of appeals have repeatedly held [6] that *Boykin* does not require that the trial court inform the defendant of the federal constitutional rights which were enumerated in the *Boykin* opinion, see note 5 *supra*. As the Fifth Circuit said in *McChesney v. Henderson*, 482 F.2d 1101, 1106 (5th Cir. 1973):

"[N]o rule of criminal procedure was mandated by *Boykin*, and there is no express requirement that specific articulation of the three constitutional rights above mentioned be given to the accused at the time of the acceptance of a plea of guilty, but it is necessary that the record show that the guilty plea was intelligently and voluntarily made."

My reading of *Boykin* is well summed up by Mr. Justice Roberts in his concurring opinion in *Commonwealth v. Godfrey*, 434 Pa. 532, 538, 254 A.2d 923, 926 (1971):

"[W]e need never overturn a guilty plea *simply* because there was no on-the-record inquiry *at the time* the plea was entered, provided that a subsequent record establishes that the plea is otherwise valid. I do not believe that *Boykin* in any way compels a contrary result.

"*Boykin*, as I read it, deals with the following situation: at the outset, the trial judge accepted a guilty plea with absolutely no on-the-record inquiry of the defendant as to whether the plea was knowingly and voluntarily entered. The Alabama Supreme Court af-

6. See *Wilkins v. Erickson*, 505 F.2d 761 (9th Cir. 1974); *United States v. Gearin*, 496 F.2d 691 (5th Cir. 1974); *Todd v. Lockhart*, 490 F.2d 626, 628 n. 1 (8th Cir. 1974); *Winters v. Cook*, 489 F.2d 174 (5th Cir. 1973); *McChesney v. Henderson*, 482 F.2d 1101 (5th Cir. 1973); *LeBlanc v. Henderson*, 478 F.2d 481 (5th Cir. 1973); *Stinson v. Turner*, 473 F.2d 913 (10th Cir. 1973); *Wade v. Coiner*, 468 F.2d 1059 (4th Cir. 1972); *United States v. Frontero*, 452 F.2d 406, 415 (5th Cir. 1971).

firmed, with no further record before it, in effect approving this procedure, at least as a matter of state law. The case then moved on to the Supreme Court of the United States where that Court was faced with a guilty plea, apparently held valid under state law, that had *no* supporting record as to voluntariness. Under these facts, the Supreme Court of the United States had no choice but to reverse and invalidate the guilty plea." (Concurring opinion of Roberts, J., joined by Bell, C. J., and Pomeroy, J.)

Because *Boykin* is a "silent record" case which imposed no requirements as to the content of guilty plea colloquys, it cannot be authority for the very specific *Ingram* requirement that the record demonstrate that the elements of each offense charged be explained to the defendant.[7]

## II.

Because I find that *Commonwealth v. Ingram, supra,* effected a change in the then existing law concerning the acceptance of guilty pleas, it is necessary that I address the question whether *Ingram* is applicable to cases, such as the one before us, in which pleas of guilty were entered before *Ingram* was decided.

As part I of this opinion demonstrates, *Ingram* was not required by federal constitutional law as set forth in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L. Ed.2d 274 (1969), by prior decisions of this Court, or by Rule 319(a) of our Rules of Criminal Procedure. While *Ingram* was no doubt designed to implement and assure compliance with the constitutional requirements as to the voluntariness of guilty pleas, it is most appropriately viewed as a new rule of criminal procedure, in effect an amendment to Rule 319(a), resting for its authority upon our supervisory powers over the courts and law en-

7. It is interesting to note that *Boykin* is not cited, much less relied upon, by the opinion of this Court in *Ingram.*

forcement officials of this Commonwealth and adopted through the medium of an opinion rendered in a case on appeal rather than by the normal rule making procedures of the Court. *See* Article V, Section 10, of the Constitution of Pennsylvania; *Commonwealth v. Campana,* 455 Pa. 622, 314 A.2d 854 (1974) [addendum opinion to *Commonwealth v. Campana,* 452 Pa. 233, 304 A.2d 432 (1973)]; *Commonwealth v. Milliken,* 450 Pa. 310, 300 A.2d 78 (1973). See also *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972).

Decisions promulgating rules of procedure adopted under our supervisory powers generally have been applied in a wholly prospective fashion. See *Commonwealth v. Jones,* 457 Pa. 563, 319 A.2d 142 (1974); *Commonwealth v. Milliken,* 450 Pa. 310, 300 A.2d 78 (1973); *Commonwealth v. Hynd,* 230 Pa.Super. 114, 326 A.2d 434 (1974).[8] That is, such decisions have been applied only to conduct or proceedings occurring after the respective dates upon which their "rules" have been announced.[9] Accordingly, in a long line of cases the Superior Court has unanimously declined to apply *Ingram* retroactively.[10]

**8.** See also *Commonwealth v. Spencer,* 442 Pa. 328, 275 A.2d 299 (1971); *Commonwealth v. O'Neal,* 441 Pa. 17, 271 A.2d 497 (1970); *Commonwealth v. Scoleri,* 399 Pa. 110, 160 A.2d 215 (1960).

Thus, procedural rules are applied in a manner similar to that in which statutes are applied. Section 1926 of the Statutory Construction Act, 1 Pa.C.S. § 1926, provides that "[n]o statutes shall be construed to be retroactive unless clearly and manifestly ·so intended by the General Assembly."

**9.** An exception to this general rule has been the repeated application by a majority of this Court of the exclusionary rule first announced in *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972), to conduct of the police which occurred prior to the date of the *Futch* decision. For the reasons which are fully set forth in my dissenting opinion in *Commonwealth v. Dutton,* 453 Pa. 547, 551, 307 A.2d 238 (1973), I believe that the retroactive application of the *Futch* rule is without foundation in precedent or policy.

**10.** See *Commonwealth v. Kearse,* 233 Pa.Super. 489, 334 A.2d 720 (1975); *Commonwealth v. Minor,* 231 Pa.Super. 139, 332 A.2d 495 (1974); *Commonwealth v. Mack,* 230 Pa.Super. 596, 326 A.2d 881

I agree with these decisions and would therefore hold that *Ingram* applies only to pleas of guilty entered after January 24, 1974, the date *Ingram* was decided.[11]

## III.

Prior to this Court's decision in *Commonwealth v. Ingram, supra,* a guilty plea colloquy was sufficient if it demonstrated that the plea was "voluntarily and understandingly tendered." Pa.R.Cr.P. 319(a).[12] In the instant case, the record shows that Minor was informed that he was charged with taking money at knifepoint from the person of one Jack Orgiefsky in a taxicab in Philadelphia, and was advised of the constitutional rights he was waiving by pleading guilty. Minor stated that he knew where he was and what he was doing, that his plea was not induced by threats or promises, and that he was satisfied with the representation of his attorney. Nevertheless, Minor argues, and the Superior Court held, that

(1974); *Commonwealth v. Thompson,* 230 Pa.Super. 417, 326 A.2d 537 (1974); *Commonwealth v. Schork,* 230 Pa.Super. 411, 326 A.2d 878 (1974); *Commonwealth v. Turman,* 230 Pa.Super. 356, 326 A.2d 891 (1974); *Commonwealth v. Hanna,* 230 Pa.Super. 194, 326 A.2d 538 (1974).

11. See *Halliday v. United States,* 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), in which the Supreme Court of the United States denied retroactive application to its supervisory rule decision in *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1960) (compliance with guilty plea colloquy requirements of Rule 11 of the Federal Rules of Criminal Procedure made mandatory).

Cf. *Commonwealth v. Godfrey,* 434 Pa. 532, 254 A.2d 923 (1969), in which this Court declined to apply retroactively *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (on-the-record showing of voluntariness of guilty pleas required by the federal constitution). If, as was held in *Godfrey, Boykin,* a federal constitutional decision, is to be given wholly prospective application, *a fortiori Ingram,* a decision which in my view has no constitutional basis, should not be applied retroactively.

12. See *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Commonwealth v. McNeill,* 453 Pa. 102, 305 A.2d 51 (1973); *Commonwealth v. Campbell,* 451 Pa. 465, 304 A.2d 121 (1973); *Commonwealth v. Maddox,* 450 Pa. 417, 300 A.2d 503 (1973).

the colloquy was deficient under pre-*Ingram* law because the record fails to demonstrate that he understood the nature of the charges against him. In my view this argument lacks merit for two reasons. First, before *Ingram*, there was no requirement that the defendant be informed of the nature of the charges against him. The comment to Rule 319(a) of our Rules of Criminal Procedure and our cases merely *recommended* that this be done. See *Commonwealth v. Campbell*, 451 Pa. 465, 467, 304 A.2d 121 (1973). Second, in any event, the record in this case shows that Minor did in fact understand the nature of the charges against him. In the course of the colloquy the trial court asked Minor, "Do you understand the charges which [sic] you appear at the bar of the Court, to wit: Aggravated Robbery and C.C.D.W., that you have an absolute right to have this matter heard by a jury?" Minor responded, "Yes." Although it would have been advisable for the court to state in full the name of the latter offense (carrying a concealed deadly weapon), I cannot say that failure to do so constitutes a fatal defect in the colloquy. The trial judge asked Minor whether he understood the charges against him; there is no reason to assume that the defendant did not respond truthfully. I agree with the following observations in the opinion of Judge Van der Voort, dissenting in the Superior Court:

> "[A]ppellant by this question and answer indicated to the hearing judge that he did understand the charges against him. He had skilled counsel and there is no reason to assume that when he says that he did understand the charges against him that he nevertheless did not.

> \*    \*    \*    \*    \*    \*    \*    \*

> "[T]he fact that the one charge was identified by its initials would be the greater reason for appellant to indicate that he didn't understand that charge if in fact

248

he did not." 231 Pa.Super. at 143, 332 A.2d at 497–98 (Dissenting opinion of Van der Voort, J.).

I am satisfied that the colloquy which preceded Lloyd Minor's pleas of guilty was adequate under the law as it stood prior to *Ingram*. Accordingly, I would reverse the order of the Superior Court which reversed the judgments of sentence.

EAGEN, J., joins in this dissenting opinion.